[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM FILED DECEMBER 5, 1994
I. INTRODUCTION
On Labor Day 1974, President Ford signed into law the Employee Retirement Income Security Act of 1974, popularly known as ERISA. 88 Stat. 829 (1974). ERISA, as it is well known, was intended to safeguard the pensions of American workers, but its sweep is much broader than that. It "sets out a comprehensive system for the federal regulation of private employee benefit plans, including both pension plans and welfare plans." District of Columbia v. Greater WashingtonBoard of Trade, 113 S.Ct. 580, 582 (1992). One of the cornerstones of this comprehensive system is a preemption provision, codified at 29 U.S.C. § 1144, that, while complicated, "is conspicuous for its breadth."FMC Corp. v. Holliday, 498 U.S. 52, 58 (1990). The motions to strike that are now before me present the question of whether § 1144 preempts the state law tort, contract and statutory claims contained in two companion cases. For the reasons set forth below, I conclude that all of these claims are preempted.
II. THE CAUSES OF ACTION
The allegations presented in the amended complaints filed in these companion cases — which, for purposes of the respective motions to strike, I assume CT Page 12217-G to be true — arise from the unilateral decision of CIGNA, an issuer of health insurance, to remove certain physicians from its list of participating physicians. The two cases here were apparently brought in concert. Hollis presents the claims of a number of patients; Napoletano presents the claims of a number of physicians. The causes of action asserted in these cases must be described in some detail.
A. Hollis
Hollis is an action brought by nine plaintiffs, each of whom asserts four causes of action.
F. Barrett Hollis, the named plaintiff, alleges that he was insured for medical benefits under a group insurance plan between CIGNA and his wife's employer. He began cancer treatment with Dr. Raphael Cooper, a participating physician in CIGNA's Health Care Network. In May 1994, CIGNA decided to remove Dr. Cooper from its list of participating physicians as of September 1994. At about this time, CIGNA sent a letter to its Health Care members stating that its "goal is to establish a comprehensive network of quality doctors who meet [CIGNA's] credentialing standards." Hollis claims that this letter is misleading because Dr. Cooper meets these standards. A few months later, CIGNA sent a second letter to its participants stating that, if their providers "choose not to participate," their care would be transferred to participating providers. Hollis claims that this letter is misleading in that it does not reflect that the removal decision was unilateral. At about the time of this second letter, CIGNA placed an advertisement in the Hartford Courant
listing a number of participating physicians. This advertisement is assertedly false because it misrepresents which physicians are allowed to re-enroll in CIGNA's network. Finally, CIGNA sent its participants a directory of providers that is allegedly misleading because it fails to indicate that physicians can be removed from the list without notice.
The first count of Hollis's amended complaint alleges that CIGNA's actions violate the Connecticut Unfair Insurance Practices Act (CUIPA), specifically CT Page 12217-H the prohibitions against misrepresentations and false information and advertising contained in Conn. Gen. Stat. § 38a-816. The second count alleges that these actions violate the Connecticut Unfair Trade Practices Act (CUTPA) in that they were unfair or deceptive acts or practices in violation of Conn. Gen. Stat. § 42-110b(a). The third count alleges that CIGNA has violated 1994 Conn. Acts 94-235, entitled An Act Concerning Managed Care, by removing Dr. Cooper from its plan even though Dr. Cooper is listed as a provider in CIGNA's filing with the Commission on Hospitals and Health Care and by failing to inform Dr. Cooper of the criteria that he has failed to meet. The fourth count alleges that these various acts constitute the common-law tort of misrepresentation.
The causes of action of the remaining eight plaintiffs are substantially similar to those asserted by Hollis. Each plaintiff claims that he or she was, either through the plaintiff's own employment or that of a spouse, a participant in a CIGNA health plan. Each plaintiff began treating with a participating physician who was subsequently removed from CIGNA's list of participating physicians. Each plaintiff asserts the four causes of action asserted by Hollis.
CIGNA has filed a motion to strike the entire amended complaint, claiming that all causes of action asserted therein are preempted by ERISA.
B. Napoletano
Napoletano is an action brought by nine plaintiffs, each of whom asserts five causes of action.
Robert S. Napoletano, M.D., the named plaintiff, alleges that he is a physician licensed to practice in the State of Connecticut. He was a participating physician in the CIGNA Health Care Network and contracted with CIGNA through Pro Care Independent Practice Association, Inc. In May 1994, Napoletano received a letter from Pro Care informing him that CIGNA had unilaterally terminated its agreement with Pro Care as of September 1994. Napoletano claims that he continues to meet all of CIGNA's credentialing CT Page 12217-I standards, that he is a third-party beneficiary of the contract between CIGNA and Pro Care, and that he was terminated without just cause.
The first three counts of Napoletano's amended complaint assert common-law causes of action. The first count alleges breach of contract. The second count alleges breach of an implied covenant of good faith and fair dealing. The third count alleges tortious interference with business expectancies. In making this third claim, Napoletano alleges that CIGNA made the various communications to its beneficiaries that have already been recounted in describing the Hollis
complaint.
The fourth and fifth counts of Napoletano's amended complaint assert statutory causes of action. The fourth count alleges that CIGNA has violated Conn. Gen. Stat § 42-110b (CUTPA) by engaging in unfair or deceptive acts or practices. The fifth count alleges that CIGNA has violated 1994 Conn. Acts 94-235 by removing him from its plan. The specific allegations set forth in Napoletano's fifth count are similar to those contained in Hollis's third count.
The causes of action of the remaining eight plaintiffs are substantially similar to those asserted by Napoletano. Each plaintiff alleges that he is a physician who contracted with CIGNA through Pro Care and was removed from CIGNA's list of participating physicians when CIGNA terminated its contract with Pro Care. Each plaintiff asserts the five causes of action asserted by Napoletano.
CIGNA has filed a motion to strike the entire amended complaint, claiming, as in Hollis, that all causes of action asserted therein are preempted by ERISA.
III. DISCUSSION
A. ERISA Preemption Principles
Whether the causes of action asserted here are preempted by ERISA is a question of statutory interpretation. CT Page 12217-J The statute in question, as mentioned, is29 U.S.C. § 1144, which provides, in relevant part, as follows:
(a) Supersedure . . .
 Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title . . .
(b) Construction and application
. . .
 (2)(A) Except as provided in subparagraph (B), nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities
 (B) Neither an employee benefit plan described in section 1003(a) of this title, which is not exempt under section 1003(b) of this title (other than a plan established primarily for the purpose of providing death benefits), nor any trust established under such a plan, shall be deemed to be an insurance company or other insurer, bank, trust company, or investment company or to be engaged in the business of insurance or banking for purposes of any law of any State purporting to regulate insurance companies, insurance contracts, banks, trust companies, or investment companies.
Each of the three clauses just quoted has come to be known by a popular name. The first clause is thepreemption clause. The second clause is the saving
clause. The final clause is the deemer clause. FMCCorp. v. Holliday, supra, 498 U.S. at 58. The interpretation of these three clauses — individually and in combination — has caused twenty years of judicial perplexity, with no obvious end in sight. The Supreme Court has diplomatically stated that they "are not a model of legislative drafting." Metropolitan Life InsuranceCT Page 12217-KCo. v. Massachusetts, 471 U.S. 724, 739 (1985), while the Second Circuit has more candidly described § 1144 as "a veritable Sargasso Sea of obfuscation,"Travelers Insurance Co. v. Cuomo, 14 F.3d 708, 717
(2d Cir. 1993), cert. granted, 115 S.Ct. 305 (1994).
Although the statutory text is confusing, § 1144 has been considered by the Supreme Court on a number of occasions, and a number of reasonably clear principles have emerged from the Court's decisions. These principles are grounded not only in the statutory language but in "the structure and purpose of the statute." Ingersoll-Rand Co. v. McClendon, 498 U.S. 133,138 (1990).
First and foremost, "[t]he pre-emption clause is conspicuous for its breadth." FMC Corp. v. Holliday,supra, 498 U.S. at 58. The focal point of this breadth is the word "relate." The Supreme Court held early on that, "A law `relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." Shaw v. Delta AirLines, Inc., 463 U.S. 85, 96-97 (1983). "This reading is true to the ordinary meaning of `relate to,' see Black's Law Dictionary 1288 (6th ed. 1990), and thus gives effect to the `deliberately expansive' language chosen by Congress." District of Columbia v. Greater WashingtonBoard of Trade, supra, 113 S.Ct. at 583 (quotingPilot Life Insurance Co. v. Dedeaux, 481 U.S. 41, 46
(1987)).
A second, related, principle is that the spectrum of laws preempted by ERISA is considerably broader than the subject matter of ERISA. The focal point of this principle is the statute's preemption of "any and all State laws." "State law" is defined as including "all laws, decisions, rules, regulations, or other State action having the effect of law, of any State."29 U.S.C. § 1144(c)(1). Congress, in enacting § 1144, specifically decided "to pre-empt state laws relating to benefit plans, rather than those laws relating to subjects covered by ERISA." Shaw v. Delta Air Lines, Inc., supra,463 U.S. at 98 n. 19. This is because "[o]ne of ERISA's main objectives was to eliminate State regulation of employee benefit plans." NYSA-ILA Medical ClinicalCT Page 12217-LServices Fund v. Axelrod, 27 F.3d 823, 826 (2d Cir. 1994). Because of this fact, "ERISA pre-empts any state law that refers to or has a connection with covered benefit plans . . . `even if the law is not specifically designed to affect such plans, or the effect is only indirect,' Ingersoll-Rand, supra, 498 U.S., at 139 . . . and even if the law is `consistent with ERISA's substantive requirements,' Metropolitan Life, supra,471 U.S. at 739." District of Columbia v. Greater WashingtonBoard of Trade, supra, 113 S.Ct. at 583. "Even in the absence of an express link to an employee benefit plan, State law is preempted `insofar as' the law applies to benefit plans in particular cases. (Shaw v.Delta Air Lines, supra, at 97 n. 17 . . .)." Morgan GuarantyTrust Co. v. Tax Appeals Tribunal,599 N.E.2d 656, 659 (N.Y. 1992).
A third principle, however, is that ERISA preemption is not without limitations. The exact scope of these limitations is not entirely clear. Shaw recognized that, "Some state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law `relates to' the plan."463 U.S. at 100 n. 21. Unhappily, when it announced this limitation, the Court expressed "no views about where it would be appropriate to draw the line." Id. In order to assess where the line should be drawn, it is helpful to consider the only two cases in which the Court has found state actions to have a sufficiently "tenuous" connection with covered plans to survive preemption.
In Fort Halifax Packing Co. v. Coyne, 482 U.S. 1
(1987), the Court held that a Maine statute requiring employers to provide a one-time severance payment to employees in the event of a plant closing was not preempted. The Court reasoned that the law in question related to a benefit rather than a "plan." "Only a plan," it explained, "embodies a set of administrative practices vulnerable to the burden that would be imposed by a patchwork scheme of regulation." Id. at 11-12. "The focus of the statute," it concluded, "is on the administrative integrity of benefit plans — which presumes that some type of administrative activity is taking place." Id. at 15. CT Page 12217-M
In Mackey v. Lanier Collection Agency Service,Inc., 486 U.S. 825 (1988), the Court held that ERISA does not forbid garnishment of a benefit plan where the purpose is to collect judgments against plan participants. The Court reasoned that "several types of civil suits . . . can be brought against ERISA welfare benefit plans." Id. at 832. ERISA specifically authorizes certain civil enforcement actions to secure specified relief, including the recovery of plan benefits.29 U.S.C. § 1132. In addition, "lawsuits against ERISA plans for run-of-the-mill State law claims such as unpaid rent, failure to pay creditors, or even torts committed by an ERISA plan . . . are relatively commonplace."486 U.S. at 833. Money judgments must be collectible in some way. The Court concluded that "garnishment is one permissible method." Id. at 834.
Balanced against Fort Halifax and Mackey, however, is Pilot Life Insurance Co. v. Dedeaux, supra. PilotLife holds that ERISA preempts state common-law tort and contract actions asserting improper processing of a claim for benefits under an insured employee benefit plan. These causes of action "relate to" an employee benefit plan. Because they were "based on alleged improper processing of a claim for benefits under an employee benefit plan, [they] undoubtedly meet the criteria for pre-emption." Id. at 48.
The Supreme Court, as mentioned, has left the dividing line between Mackey (which allows some "run-of-the-mill" tort actions) and Pilot Life (which broadly preempts many other tort actions) unclear, and, however this case is resolved, it is necessary to resort to first principles. The governing principle has been well stated by the Second Circuit in Aetna LifeInsurance Co. v. Borges, 869 F.2d 142 (2d Cir.), cert.denied, 493 U.S. 811 (1989). "What triggers ERISA preemption is not just any indirect effect on administrative procedures but rather an effect on the primary administrative functions of benefit plans, such as determining an employee's eligibility for a benefit and the amount of that benefit." Id. at 146-47. AccordAirports Co. v. Custom Benefit Services of Austin, Inc.,28 F.3d 1062, 1065 (10th Cir. 1994). ERISA thus CT Page 12217-N "preempts claims challenging the administration of employee benefit plans." MNVA Railroad, Inc. v. JohnAlden Life Insurance Co., 507 N.W.2d 15, 18
(Minn.Ct.App. 1993). (Emphasis in original.) As the Seventh Circuit has pithily explained, if a participant goes to a plan office and slips on a banana peel, that participant can bring a negligence suit. A case involving the nature of plan benefits, however, "is not a banana-peel case." Pohl v. National Benefit Consultants,Inc., 956 F.2d 126, 128 (7th Cir. 1992).
The preceding discussion of principles has focused on the preemption clause. The saving clause and the deemer clause raise complex issues of their own. "The saving clause returns to the States the power to enforce those state laws that `regulat[e] insurance,' except as provided in the deemer clause. Under the deemer clause, an employee benefit plan governed by ERISA shall not be `deemed' an insurance company, an insurer, or engaged in the business of insurance for purposes of state laws `purporting to regulate' insurance companies or insurance contracts." FMCCorp. v. Holliday, supra, 498 U.S. at 58.
Each clause has some internal complexity of its own. The principal task in construing the saving clause is to define what is a law that "regulates insurance." In addressing this question, the Supreme Court has referred to the case law interpreting the phrase "business of insurance" under the McCarran-Ferguson Act, 15 U.S.C. § 1011, et seq. Three criteria have been used to determine whether a practice falls under the "business of insurance" for purposes of the McCarran-Ferguson Act: "first, whether the practice has the effect of transferring or spreading a policyholder's risk; second, whether the practice is an integral part of the policy relationship between the insurer and the insured; and third, whether the practice is limited to entities within the insurance industry." Union LaborLife Ins. Co. v. Pireno, 458 U.S. 119, 129 (1982). (Emphasis in original.) See Pilot Life Insurance Co. v.Dedeaux, supra, 481 U.S. at 48-49. Under the McCarran-Ferguson Act, Pireno explains, "[n]one of these criteria is necessarily, determinative in itself," but, rather, "all three criteria" must be examined.458 U.S. at 129. CT Page 12217-O
The deemer clause is also a clause of great complexity. See FMC Corp. v. Holliday, supra. Because the preemption and saving clauses are dispositive of the claims in this case, however, the deemer clause need not be considered here.
These governing principles must now be applied to the various causes of action asserted in the amended complaints.
B. Application of the Principles
1. Hollis
a. CUIPA
The first question that must be addressed with respect to the CUIPA claims asserted in Hollis is whether these claims are preempted by the preemption clause. I conclude that they are.
The CIGNA plan in question is plainly "an employee benefit plan" as that term is defined by ERISA. An "employee benefit plan" means "an employee welfare benefit plan." 29 U.S.C. § 1002(3). An "employee welfare benefit plan" is defined as "any plan, fund, or program . . . established or maintained by an employer . . . for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits. . . ." 29 U.S.C. § 1002(1). Each of the plaintiffs in Hollis is described in the amended complaint as being insured under a group insurance plan between CIGNA and an employer. The plaintiffs do not contend that this plan is anything other than "an employee benefit plan."
Hollis's CUIPA cause of action "relates to" the plan. As already discussed, the Supreme Court has broadly construed the term "relate to," requiring only "a connection with or reference to such a plan." Shaw v.Delta Air Lines, Inc., supra, 463 U.S. at 97. Such a connection plainly exists here since references to the plan abound in the first count of the amended complaint. CT Page 12217-P The only real question is whether the connection here is "too tenuous, remote or peripheral . . . to warrant a finding that the [cause of action] `relates to' the plan." Id. at 100 n. 21. The connection here cannot be so described. This is because the plaintiffs challenge the administration of the plan in question.
This case is not analogous to DiPietro Corp. v.Interactive Benefits Corp., 825 F. Sup. 459 (D.Conn. 1993), and Pace v. Signal Technology Corp.,628 N.E.2d 20 (Mass. 1994), the principle authorities relied on by the plaintiffs in this regard. DiPietro was an action brought by an employer alleging, inter alia, misrepresentation and CUIPA violations. The complaint essentially alleged that the defendant insurance company had misrepresented the nature of the plan in selling that plan to the employer. Pace was an action brought by a discharged employee who alleged that the defendant insurance company had falsely told him that his disability insurance would continue while he received severance pay. Acting in reliance on this representation, he did not obtain such insurance elsewhere and was, subsequently, disabled during the severance period.
Even on their own terms, DiPietro and Pace cannot be reconciled with controlling Second Circuit precedent. See Smith v. Dunham-Bush Inc., 959 F.2d 6 (2d Cir. 1992); Nealy v. U.S. Healthcare HMO, 844 F. Sup. 966,973 n. 1 (S.D.N.Y. 1994) (both holding claims of reliance on insurance company representations to be preempted). But the claims advanced in Hollis are, in any event, quite different. There is no allegation inHollis that CIGNA sold its plan to an employer by the use of misrepresentation or that the plaintiffs relied on some misrepresentation to their detriment. The complaint here, rather, focuses on CIGNA's removal of certain physicians from its plan. This is, in essence, a complaint about plan administration. This is a core ERISA concern.
A moment's reflection will confirm why this is so. The preemption clause "was intended to ensure that plans and plan sponsors would be subject to a uniform body of benefits law; the goal was to minimize the CT Page 12217-Q administrative and financial burden of complying with conflicting directives among States or between States and the Federal Government." Ingersoll-Rand Co. v.McClendon, supra, 498 U.S. at 142. Allowing state law actions like the one here would subject plans and plan sponsors to burdens not unlike those that the preemption clause seeks to foreclose. It is entirely foreseeable that different state courts, construing a wide array of state statutory provisions and common-law principles, might develop different substantive standards governing the circumstances under which health plans could remove physicians from their lists. This would, in the language of Ingersoll-Rand, require "the tailoring of plans . . . to the peculiarities of the law of each jurisdiction. Such an outcome is fundamentally at odds with the goal of uniformity that Congress sought to implement." Id.
The final question that must be addressed is whether the CUIPA cause of action, in spite of being preempted by the preemption clause, is saved by the savings clause. I conclude that it is not.
Three different judges of the United States District Court for the District of Connecticut, as well as two United States Magistrates, have held that claims under CUIPA are preempted by ERISA. Fischman v.Blue Cross Blue Shield of Connecticut, 755 F. Sup. 528,531 (D.Conn. 1990) (Dorsey, J.); Bailey-Gatesv. Aetna Life Insurance Co., No. 3:93CV01404 (D.Conn. Sept. 21, 1994) (Daly, J., approving recommended ruling of Margolis, Mag.); Lazaroff v. BlueCross Blue Shield of Connecticut. Inc., 1989 WL 235958 (D.Conn. Jan. 11, 1989) (Daly, J.); Stone v.Blue Cross Blue Shield of Connecticut, 1988 WL 146645 (D.Conn. Jan. 6, 1989) (Nevas, J., approving recommended ruling of Latimer, Mag.). Judge Daly's opinion in Lazaroff contains the most thorough analysis and carefully considers the three-prong analysis of Pireno and Pilot Life described above. He acknowledges that CUIPA satisfies the third Pireno
prong (inquiring whether the cause of action is limited to entities within the insurance industry). It does not, however, meet either of the first two prongs. Judge Daly explains that: CT Page 12217-R
 CUIPA prohibits certain practices by insurers, but it does not directly or appreciably alter a policyholder's risk. Moreover, although CUIPA does affect the policy relationship between the insurer and the insured by prohibiting various unfair practices, it is not integral to the policy relationship. Unlike other statutory provisions, see, e.g., Conn. Gen. Stat. §§ 38-319 et seq. (no-fault motor vehicle insurance requirements), CUIPA does not regulate the insurance contract itself. Because it regulates conduct surrounding the insurance contract rather than focusing on the nature of the contractual relationship between the insured and the insurer, CUIPA does not regulate the business of insurance under the second McCarran-Ferguson criterion. See Roberson v. Equitable Life Assur. Soc. of U.S., 661 F. Sup. 416, 422 (C. D. Cal. 1987).
 More importantly, the remedies provided by CUIPA conflict with the civil remedies provided by ERISA in § 1132. As the Supreme Court has recently concluded,
 the detailed provisions of [§ 1132(a)] set forth a comprehensive civil enforcement scheme that represents a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans. The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-based plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA.
 Dedeaux, [481 U.S. at 54]. ERISA's enforcement provisions permit beneficiaries to recover benefits due them under the plan, to enforce existing rights under the plan, and to clarify future rights under the plan. 29 U.S.C. § 1132(a)(1)(B). In addition, a beneficiary may bring a civil action to enjoin any conduct that violates ERISA or the plan or to obtain other appropriate equitable relief. 29 U.S.C. § 1132(a)(3). By contrast, CUIPA CT Page 12217-S provides a private right of action for money damages resulting from unfair insurance practices. Griswold v. Union Labor Life Ins. Co., 186 Conn. 507, 519-20 (1982). Such a supplementation of ERISA's civil enforcement provisions is contrary to congressional intent to provide an exclusive and comprehensive procedure for claims settlement.
Lazaroff, supra, at 2-3. (Footnote omitted.) This analysis is persuasive. For the reasons stated by Judge Daly, the CUIPA cause of action is not saved by the saving clause. The motion to strike the CUIPA causes of action must consequently be granted.
Given the analysis already set forth, the remaining causes of action can be considered much more expeditiously.
b. CUTPA
Three cases recently decided by the United States District Court for the District of Connecticut hold that CUTPA claims against employee Healthcare plans are preempted by ERISA. Bailey-Gates, supra; Lazaroff,supra; Stone, supra. The case for preemption here is even stronger than in the case of CUIPA, because the CUTPA claims, like the common-law claims about to be discussed, do not fall within the scope of the saving clause. "They are based on state laws of general application that do not specifically regulate the insurance industry . . . Although they may have some impact on the insurance industry and although insurers obviously can breach contractual obligations and engage in unfair trade practices, neither the common-law actions nor CUTPA is specifically directed at insurance companies." Lazaroff, supra, at 2.
c. P.A. 94-235
1994 Conn. Acts 94-235, § (e)(1) requires each preferred provider network to file with the Commission on Hospitals and Health Care "the general criteria for its selection or termination of health care providers." Section (e)(2) then provides that, "If a network uses criteria that has not been filed pursuant to subdivision (1) of this subsection to judge the quality and cost-effectiveness CT Page 12217-T of a health care provider's practice under any specific program within the network, the network may not reject or terminate the provider participating in that program based upon such criteria until the provider has been informed of the criteria that his practice fails to meet."
P.A. 94-235 does not on its face provide for a private cause of action. Assuming, without deciding, that such a cause of action exists, the cause of action asserted by the Hollis plaintiffs is plainly preempted by ERISA. Section (e) of the act has a direct impact on plan administration, and the potential for conflict in substantive law is obvious. If such a cause of action were allowed, it is entirely foreseeable that different states might develop different standards applicable to the same plan conduct, "requiring the tailoring of plans . . . to the peculiarities of the law of each jurisdiction."Ingersoll-Rand, supra, 498 U.S. at 142. Such an outcome is fundamentally inconsistent with the preemption clause.
This cause of action is not saved by the saving clause. P.A. 94-235 is not on its face limited to practices within the insurance industry. This contrasts with the Virginia statute held to be "saved" in StuartCircle Hospital Corp. v. Aetna Health Management,995 F.2d 500 (4th Cir.), cert. denied, 114 S.Ct. 579 (1993), which expressly applied to "insurers." Id. at 501. Moreover, the agency designated for filing by P.A. 94-235 is not the Department of Insurance but the Commission on Hospitals and Health Care, which is part of the Department of Health Services. Conn. Gen. Stat. § 19a-148. Although P.A. 94-235 plainly has some impact on insurers, it is not a law that "regulates insurance" for purposes of the saving clause. The motion to strike this cause of action must consequently be granted.
d. Misrepresentation
The misrepresentation causes of action are preempted for reasons already explained. In the Second Circuit, at least, misrepresentation actions that affect plan administration much more tenuously than those CT Page 12217-U asserted in Hollis are preempted under Smith v. Dunham-Bush,Inc., supra. As explained above, however, the causes of action here go directly to plan administration and are plainly preempted. The motion to strike them must be granted.
2. Napoletano
a. Breach of Contract
The Napoletano causes of action are even more plainly preempted by ERISA than the causes of action asserted in Hollis. The Hollis complaint is concerned in part with misrepresentations made to plan beneficiaries, although its ultimate focus on CIGNA's removal of certain physicians from its list is clear. Napoletano, in contrast, does not even have a misrepresentation veneer. It is a complaint brought by physicians who directly challenge their removal from the list. This is a direct challenge to plan administration and, as such, is preempted by ERISA.
A number of courts have found that "ERISA preempts claims of breach of contract . . . filed by plan participants against plan providers." Nealy v. U.S.Healthcare HMO, 844 F. Sup. 966, 972 (S.D.N Y 1994) (citing authorities). The case for preemption is even stronger when a physician brings a breach of contract action disputing his removal from a plan's list of participating physicians. Conflict in the law governing such plans is inevitable if different states are allowed to develop different common-law standards regulating the circumstances under which such contracts can be terminated. It is a conflict of this sort that the preemption clause was intended to foreclose. The motion to strike the breach of contract counts must be granted.
 b. Breach of Implied Covenant of Good Faith and Fair Dealing
The same considerations govern the counts asserting breach of an implied covenant of good faith and fair dealing. The motion to strike these counts must CT Page 12217-V be granted.
 c. Tortious Interference with Business Expectancies
The same considerations again govern the counts asserting tortious interference with business expectancies. The common-law tort invoked by these counts does not turn on the existence of an actual contract but, by its nature, does require that there be "business expectations" that the law will protect from interference. Sportsmen's Boating Corp. v. Hensley,192 Conn. 747, 753, 474 A.2d 780 (1984). Here, perhaps even more than in the breach of contract counts, the development of different state standards as to just what "expectations" the law will recognize between a plan and its participating physicians will result in the very patchwork of conflicting laws governing plan administration that the preemption clause was intended to avoid. The motion to strike these counts must be granted.
d. CUTPA
The preemption of CUTPA claims by ERISA has already been discussed with respect to Hollis. For the reasons discussed above, the case for preemption is even stronger here. The motion to strike the CUTPA counts must be granted.
e. P.A. 94-235
The preemption of private action claims based on P.A. 94-235, assuming for purposes of argument that a private right of action exists, has already been discussed with respect to Hollis. For the reasons discussed above, the case for preemption is even stronger here. The motion to strike the P.A. 94-235 counts must be granted.
IV. CONCLUSION
For the reasons set forth above, the motions to strike the entire complaints in Hollis and Napoletano
are granted. CT Page 12217-W