[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
The defendant Connecticare has moved for summary judgment on three of the counts of the plaintiff's complaint, second count (state antitrust law), third count (breach of implied covenant of good faith and fair dealing), Fourth count (CUTPA violation).
Connecticare is engaged in providing health care coverage to groups of employees through benefit plans sponsored by employees. It contracts with employers to provide health care. The plaintiffs formerly were providers of chiropractic services in the defendant's health provider network. In 1990 the defendant began to consider the formation of an independent practice association (IPA) as an alternative to the existing individual contractural relationships with chiropractors — chiropractic treatment of subscribers would be limited to a single chiropractic group. One of the plaintiffs, Dr. Curry, was elected vice chairman and the committee was organized to determine standards of membership in the prospective chiropractic group.
The defendant corresponded with providers who at the time where chiropractic providers; information was requested from these individuals.
The committee decided to set up an IPA and to that end organized and incorporated Connecticut Chiropractic care, P.C. (C.C.C.). Credentials and standards were adopted by CCC. Certain chiropractors were chosen initially and future membership determinations were to be based on agreed upon credential standards. The plaintiffs were not selected by CCC for membership and this can longer participate in the defendant's restructured provider network.
The plaintiffs maintain, and support their position by CT Page 13788 affidavit, that the defendant Connecticare did play a role in the decision as to who would participate in the determination as to who would participate in the IPA. The plaintiffs assert by way of affidavit that a document generated by the defendant showed "high utilizers" — utilization refers to the cost per patient per visit and the number of visits per year. Dr. Curry was informed that high utilizers wouldn't be accepted in the I.P.A. Some of those accepted had higher utilization rates than those of the plaintiffs. At a meeting of prospective IPA member chiropractors a map of the state was displayed showing pins placed on certain cites. Later the defendant and CCC informed the plaintiff Santiago she would not be offered an IPA contract based on a review of geographical need and participation criteria. Dr. Santiago's practice is located in the same town as Dr. Owens who was a member of the CCC board of directors and who was thus in the IPA. As noted the plaintiffs assert the defendant did participate in determining who would be allowed in the IPA.
The defendant by affidavit asserts it only provided logistical and administrative support to CCC pursuant to a contract but denies participating in selecting the chiropractors who would be let into the IPA and did not require CCC that include or exclude certain individuals from membership.
The rules to be applied in summary judgment matters are well-known. Such a motion must not be granted if there is a genuine issue of material fact.
The motion for summary judgment claims that the second, third and fourth counts brought against Connecticare are barred by the federal act known as ERISA and also that as a matter of state law the causes of action in the three counts cannot be maintained and no genuine issue of material fact bars the granting of summary judgment on these counts.
The ERISA preemption claim appears to be based on an analysis the allegations of the complaint and the relief sought. This issue appears to be resolvable as an issue of law and, at least to the court, it does not appear that the plaintiffs claim an issue of material fact prevents the granting of the motion — they argue, as a matter of law there is no ERISA preemption. The plaintiffs do maintain the three counts should not be dismissed on state law grounds because there exist genuine issues of material fact. CT Page 13789
(1)
ERISA PREEMPTION
The first issue that must be discussed by the court is whether the Employment Retirement Income Security Act (ERISA),29 U.S.C. § 1001 et seq., and specifically § 1144(a) of that act preempts the state law claims made by the plaintiffs in this case. Section 1144 in relevant part states that ERISA "shall superseded any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." Section 1144(c) provides and the Supremacy Clause of the federal constitution requires that the term "state laws" includes any state statute, regulation, common law ruling or other state action.
The reach of federal preemption under § 1144(a) has been described in broad language. In Shaw v. Delta Airlines Inc.463 U.S. 85, 96-97 (1982), the court said: "A (state) law `relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection or reference to such a plan." This broad language must be tempered for as the court said in Alessi v.Raysbestos-Manhattan, Inc., 451 U.S. 504, 522 (1980): "Our analysis of this problem must be guided by a respect for the separate spheres of governmental authority preserved in our federalist system." In a recent case Justice Souter in referring to § 1144(a) added an even more dramatic flourish by saying "we . . . have addressed claims of preemption with the starting presumption that Congress does not intend to supplant state law."New York Blue Cross v. Travelers Insurance, 514 U.S. ___,131 L.Ed.2d 695, 704 (1995). However, it is difficult to see how Congress could have used clearer language than that set forth in § 1144(a). Also even in these days when the philosophy of Federal retrenchment seems so far advanced Justice Souter in the end quoted with approval language in an earlier case, Ingersoll-Randv. McClendon, 498 U.S. 133, 142 (1992). There the court said that in enacting the statute Congress intended:
 "to ensure that plans and plan sponsors would be subject to a uniform body of benefits law; the goal was to minimize the administrative and financial burden of complying with conflicting directives among States or between States and the Federal Government . . ., [and to prevent] the potential for conflict in substantive law .. requiring the tailoring of CT Page 13790 plans and employer conduct to the peculiarities of the law of each jurisdiction." Ingersoll-Rand, 498 U.S. at 142, 112 L.Ed.2d 474, 111 S.Ct. 478.
This echoes the statement of a Senator quoted in Pilot LifeIns. Co. v. Dedeaux, 481 U.S. 41, 56 (1987) who said: "The uniformity of decision which the act is designed to foster will help administrators, fiduciaries and participants to predict the legality of proposed actions without the necessity of reference to varying state laws."
In deed as Justice Souter notes at page 706 of New York BlueCross v. Travelers Ins.: "The basic thrust of the preemption clause, then, was to avoid a multiplicity of regulation in order to permit the nationally uniform administration of employee benefit plans."
The question really becomes what type of litigation based on state statute or common law should be held to interfere with the administration of an employee benefit plan? For preemption to be found then two issues must be addressed: (1) what does the "administration" of such a plan mean and (2) assuming we establish a definition for that term what type and/or degree of state interference is permissible without a finding of preemption.
There are scores of Federal cases that struggle with the issue of preemption and the analysis is confused because of the broad range of employee benefit plans covered by ERISA. They range from pension to health plans. Often then it is not helpful to cull out language in one case or another that might be said to define what the administration of a plan means in one context and apply it to a different factual setting.
In a triumph of understatement the court in Arkansas BlueCross Blue Shield v. St. Mary's Hospital, 947 F.2d 1341, 1344
(CA 8, 1991) said that Shaw v. Delta Airlines Inc., supra doesn't "provide courts with a fool-proof method for determining on which side of the preemption line a specific state statute falls." But the court then goes on to provide a helpful review of the cases and some general principles that should be considered in deciding the issue of Federal preemption under ERISA. The court notes that Federal cases: CT Page 13791
 "have relied on a variety of factors when determining whether a state statute of general application `relates to' ERISA plans. These factors include whether the state law negates an ERISA plan provision, Baxter v. Lynn, 886 F.2d 182, 185 (8th Cir. 1989), whether the state law affects relations between primary ERISA entities, Firestone Tire Rubber Co. v. Neusser, 810 F.2d 550, 556 (6th Cir. 1987); Sommers Drug Stores v. Corrigan Enters, 793 F.2d 1456, 1467 (5th Cir. 1986), whether the state law impacts the structure of ERISA plans, United Food Commercial Workers v. Pacyga, 801 F.2d 1157, 1160 (9th Cir. 1986), whether the state law impacts the administration of ERISA plans, Fort Halifax Packing Co. v. Coyne, 482 U.S. 1, 9-10, 107 S.Ct. 2211, 2216-17, 96 L.Ed.2d 1 (1987), whether the state law has an economic impact on ERISA plans, Aetna Life Ins. Co. v. Borges, 869 F.2d 142, 147-48 (2d Cir. 1989), whether preemption of the state law is consistent with other ERISA provisions, Mackey v. Lanier Collections Agency Serv., 486 U.S. 825, 832-40, 108 S.Ct. 2182, 2186-90, 100 L.Ed.2d 836
(1988), and whether the state law is an exercise of traditional state power, Aetna Life Ins. Co., 869, F.2d at 148; Firestone Tire Rubber Co., 810 F.2d at 555.
 This court agrees that all these factors can be relevant to an ERISA preemption analysis. Like any list of factors, however, they only serve to focus and clarify the court's analysis. The court must still look to the totality of the state statute's impact on the plan — both how many of the factors favor preemption and how heavily each individual factor favors preemption are relevant.
 We do not believe that any one factor, by itself, is determinative of the ERISA preemption issue before the court today."
Id. at pp. 1344-1345. CT Page 13792
No one factor is controlling. Merely because a state law or cause of action represents a traditional exercise of state power won't dictate a finding that there is no ERISA preemption. Likewise just because a particular law does not affect relations between primary ERISA plan entitles should not be controlling.
But as a 10th Circuit case has put it a primary concern must be whether the state law or state common law or statutory action affects the "structure, the administration or the type of benefits provided by an ERISA plan", Airparts Co. v. CustomBenefit Services of Austin Inc., 28 F.3d 1062, 1065 (CA 10, 1994), see also Hospice of Metro Denver Inc. v. Group Health Ins.of Okla, Inc., 944 F.2d 752, 753 (CA 10, 1991), Rebaldo v. Cuomo,749 F.2d 133, 139 (CA 2, 1984). In Airparts Co. the employers and trustees of a pension plan brought state law claims for negligence indemnity and common law fraud against a consultant to the plan administrators. The court noted the state law claims wouldn't have any effect on the plan entities who were united in seeking redress against the defendant. But the court went on to say: "Additionally, these claims will not affect, the structure and administration of the plan or type of benefits provided by the plan;" there was no effort to "modify the terms of the plan," id. p. 1066. The court went on to quote from Joos v.Intermountain Health Corp., Inc., 25 F.3d 915, 917 (CA 10, 1994) which said: "If the elements of the ERISA plan are inherently part of the factual basis of the . . . lawsuit, the lawsuit is preempted in part because of the possibility of inconsistent or contradicting interpretations."
To ascertain whether a particular state law or suit would affect the structure, administration or the type of benefits of an ERISA plan one must not merely look at which entity — here Connecticare — the litigation is aimed at but at the relief being sought. Here the plaintiffs seek inclusion in the provider network that certain of their patients' employee benefit plans utilize. As the defendant notes the provider network "is an integral part of, and established pursuant to the employee benefits plans of the plaintiffs' patients."
The recent case of Hollis et al v. Agna,13 Conn. L. Rptr. 396
(1995) has a bearing on the issue now before this court. The factual setting and the issues presented are similar.
In that case a group of participants in a CIGNA health plan CT Page 13793 sued the defendant on a variety of state statutory claims. The basis of the claims was that the defendant had wrongfully excluded a physician from its list of participating physicians whose fees would be reimbursed under a private medical plan. The court at page 400 said:
 "This is in essence a complaint about plan administration. This is a core ERISA concern.
 A moment's reflection will confirm why this is so. The preemption clause "was intended to ensure that plans and plan sponsors would be subject to a uniform body of benefits law; the goal was to minimize the administrative and financial burden of complying with conflicting directives among States or between States and the Federal Government." Ingersoll-Rand Co. v. McClendon, supra, 498 U.S. at 142. Allowing state law actions like the one here would subject plans and plan sponsors to burdens not unlike those that the preemption clause seeks to foreclose. It is entirely foreseeable that different state courts, construing a wide array of state statutory provisions and common-law principles, might develop different substantive standards governing the circumstances under which health plans could remove physicians from their lists. This would, in the language of Ingersoll-Rand, require "the tailoring of plans . . . to the peculiarities of the law of each jurisdiction. Such an outcome is fundamentally at odds with the goal of uniformity that Congress sought to implement." Id.
As in Hollis the relief sought here would permit an intervention into the very provider network the defendant administers.
From that perspective cases like Aetna Life Insurance v.Borges, 869 F.2d 142 (CA 2, 1989) really are not on point or helpful to the resolution of the issue now before the court. There the plaintiff insurance company brought an action for declaratory an injunctive relief contending that the state CT Page 13794 improperly demanded the surrender under state escheat laws of $2.5 million in uncashed checks and drafts under ERISA plans. The discussion of the court at 869 F.2d pages 145-147 is replete with comments that no preemption should be found where there is only a "peripheral" effect on a plan or there is some "minimal indirect impact on administration". In other words the court in Borges
assumed as a starting point that the state action did "not affect the structure, the administration or the type of benefits provided by an ERISA plan."
In other words the cases seem to say if a state law or cause of action does not affect the structure of an ERISA plan or administration or type of benefits mere economic impact does not require a finding of preemption; thus see Aetna Life InsuranceCo. v. Borges, supra, Mackey v. Lanier Collections Agency Services Inc., 486 U.S. 825 (1988) (generally applicable garnishment law), Fort Halifax Packing Co. v. Coyne, 482 U.S. 1
(1987) (law lump sum severance payments when closing a plant),Rebaldo v. Cuomo, 749 F.2d 133 (CA 2, 1984) (a law prescribing what hospitals can charge for in-patient care, thereby preventing plans from negotiating their own discount rates with hospitals),Firestone Tire Rubber Co. v. Neusser, 810 F.2d 550 (CA 6, 1987) (city tax of general application that effects employee contributions to benefit plans). But again that is not what is involved here — here the plaintiffs seek to be included in the provider network, directly affecting the administration of the plan and its benefits.
Similarly as noted in the Arkansas Blue Cross, Blue Shield
case some courts have found that preemption is dictated when a state law affects relations between primary ERISA entities,Sommers Drug Stores v. Corrigan Enterprises, Inc., 793 F.2d 1456,1468 (CA 5, 1986). Such laws would obviously affect the administration of the ERISA plan or its benefits. But so too would a state law or suit which, as here, would affect the delivery of plan benefits by the plan to beneficiaries even :if the way that result is effected is through the relief sought in a suit brought by an "outside" entity against the plan, cfMetropolitan Life Ins. Co. v. Massachusetts, 471 U.S. 724
(1985).[1]
Also while it is true that an important consideration must be whether the state law giving rise to the cause of action focuses specifically on ERISA benefit plans. cf Aetna Life Ins. Co. v.Borges, 869 F.2d 142, 147 (CA 2, 1989) (escheat law sought to be CT Page 13795 enforced applied to lost or abandoned property generally), "(t)his does not end (the) inquiry, however. A state rule of law may be preempted even though it has no such direct nexus with or is not purposely aimed at ERISA plans if its effect is to dictate or restrict the choices of ERISA plans with regard to their benefits, structure, reporting and administration or if allowing states to have such rules would impair the ability of a plan to function simultaneously in a number of states," United Wire,Metal Machine Health and Welfare Fund v. Morristown MemorialHospital, 995 F.2d 1179, 1193 (CA 3, 1993), see also ErisaPreemption — State Law, 121 L.Ed.2d 783, 797-798 (1995) which cites Ingersoll-Rand Co. v. McClenden, 498 U.S. 133, 141 (1990). That is exactly the situation here.
The plaintiffs also argue that a finding of preemption here would create an insulated legal world in which Connecticut's laws of general applicability wouldn't apply to the defendant. They cite DiPietro-Kay v. Interactive Benefits Corp., supra which quoted Rebaldo v. Cuomo, supra to the effect that ERISA can't be held to invalidate every state action that may increase the costs of operating these plans because otherwise the plans would be permitted to lead a "charmed existence that was never contemplated by Congress." 825 F. Supp. at p. 462. But DiPietro-Kay
in rejecting the claim of preemption was dealing with an allegation that the defendant misrepresented and concealed the renewal protection rider on the plan from the employer who brought suit. Before making the above noted comment the court explicitly found that the plaintiff "does not challenge any action taken by (the defendant) in administering the plan, e.g. processing a claim or disbursing a benefit, nor do (the plaintiffs) claim any right under the plan, dispute its terms or attempt to modify it." The court went on to hold that the one time recovery sought by the plaintiff based on benefits it would've been provided with if it'd been allowed to take advantage of the renewal protection rider would not "implicate the administration of the plan", 825 F. Supp. at p. 462. Having made these observations the court went on to conclude although there might be some economic impact on benefit plans by allowing such claims, that would not demand preemption. It was in this context that the court made the above referenced remarks now relied upon by the plaintiff. If the administration of the plan isn't affected, a de minimis increase in operating costs certainly don't dictate preemption. Here the plan is directly affected. CT Page 13796
Also the fact that the plaintiffs are forestalled in asserting general remedies provided by state law won't defeat a finding of preemption when even a law of general application must be preempted because of its impact on an ERISA plan.
The point is that if preemption is found then the only remedy provided is a federal one and the point of the federal remedy is that it is provided to plan participants and beneficiaries,29 U.S.C. § 1132. Given the broad fiduciary duties placed on plan administrators under the act and the power of the Secretary of HEW under § 1109 of the federal act to enforce those duties, I certainly can't say federal law doesn't provide adequate protection to plan participants for ensuring the adoption and implementation of an appropriate employee benefit plan. Third party providers and their interest in participation in a plan were not a concern the federal act meant to directly address.
Their exclusion would only become a concern of the Federal act if it could be shown that their exclusion somehow violated the fiduciary obligations of the plan administrators to the plain beneficiaries. If apart from that such exclusion is claimed to have been improper or illegal and no state or federal remedy is available due to preemption, perhaps a due process claim would be presented. But that is not before me.
In any event I find that the action brought in this case is preempted by ERISA. No genuine issue of material fact is presented since the allegations of the complaint and the relief sought properly raise the issue of preemption
(2)
NON ERISA CLAIMS FOR SUMMARY JUDGMENT
(a)
In the third count the plaintiffs allege the defendant violated an implied covenant of good faith and fair dealing owed to plan beneficiaries by failing to inform beneficiaries that it entered into a contract with a group of chiropractic physicians which they must use but with whom the defendant agreed to pay a lump sum each month for chiropractic services. Every contract carries an implied covenant of good faith and fair dealing but it is difficult to understand how this theory can be relied upon here since there does not appear to be an underlying between the CT Page 13797 plaintiffs and Connecticare. Apart therefore from the court's ruling on ERISA preemption there is an independent ground to grant the defendant's motion for summary judgment on the third count. It should be noted, however, that the very allegations set forth in this count and in the second count, asserting CUTPA violations, underline the reasons why ERISA preemption must be found. Both counts base much of their factual allegations giving rise to their respective legal claims on the perceived effect that the actions of the defendant and a certain group of chiropractic physicians will have on plan beneficiaries. The plan administrators and the beneficiaries are certainly primary entities of the ERISA plan.
The defendant also raises a non-ERISA standing objection to the plaintiff's CUTPA claim in the second count. The plaintiffs do point out that the CUTPA claim does allege Connecticare breached obligations owed to prospective I.P.A. members — the plaintiffs themselves. On the state of the record before me I'm not prepared to say that summary judgment should be granted on the non-ERISA preemption claim of lack of standing as to the CUTPA count.
(b)
The fourth count of the complaint alleges that the defendant violated the state anti-trust act. The court has ruled that the claim is precluded by ERISA and will discuss whether apart from the ERISA grounds the defendant should prevail on its motion for summary judgment as to this count.
The plaintiffs allege the defendant conspired with chiropractic physician competitors of the plaintiffs to persuade or induce third parties — plan beneficiaries to utilize the services of other doctors than the plaintiffs. Their exclusion from membership in CCC would according to the plaintiff's allegations be a secondary boycott.
Our anti-trust statute is set forth in § 35-28 of the general statutes and regarding the interpretation of this statute our court has said: "the judicial interpretation of the federal act is particularly pertinent in our construction of the state statute," Elida v. Harinor Realty Corp., 177 Conn. 218, 226
(1979).
A major contention of the defendant is that an essential CT Page 13798 element of an antitrust violation is the allegation that the concerted action imposes an unreasonable restrain on trade, see subsection (a) of the statute, State v. Hossan-Maxwell, Inc.181 Conn. 655, 666 (1980).
In determining whether a challenged activity constitutes an unreasonable restraint on trade the courts use a per se analysis or a rule of reason analysis.
A per se analysis is used only in a limited class of cases a court must conclude that a defendant's actions are so plainly harmful to competition and so obviously lacking in any redeeming pro-competitive values that they're conclusively presumed illegal without the need for further examination, Broadcase Music Inc. v.CBS, 441 U.S. 1, 8 (1979). As said in Capital Imaging v. MohawkValley Medical Assoc., 996 F.2d 537, 543 (CA 2, 1993).
 "Most cases fall outside these narrow categories held to be illegal per se. In the general run of cases a plaintiff must prove an antitrust injury under the rule of reason. Under this test the plaintiff bears the initial burden of showing that the challenged action has had an actual adverse effect on competition as a whole in the relevant market; to prove it has been harmed as an individual competitor will not suffice."
As the court noted the Supreme Court has cautioned against applying the per se rule to professional associations "because the economic impact of professional activities is difficult to track", id at page 543.
Cases cited by the plaintiffs on other points raised in their brief support the application of a rule of reason test here, cfKruezer v. American Academy of Periodontology, 735 F.2d 1479,1491 (CADC, 1984), Wilk v. AMA, 895 F.2d 352, 359 (CA 7, 1990), but see Weiss v. Tork Hospital, 745 F.2d 786, 817 (CA 3, 1984). The underlying purposes sought to be effectuated by setting up the IPA and forming the CCC are not illegal, in fact they merely seek to control costs. Given that courts should be wary about creating per se rules in this area. Since I believe it is appropriate to use the rule of reason test to determine if there has been a sufficient showing of restraint of trade, it is helpful to examine the Capital Imaging case. That case involved a CT Page 13799 situation where the court of Appeals upheld the trial court's granting of the defendant's motion for summary judgment. Later on in the opinion at 996 F.2d page 546 the court said that in the summary judgment context the: "Rule of reason analysis requries [requires] the antitrust plaintiff to bear the initial burden of demonstrating that the defendant's conduct or policy has had a substantially harmful effect on competition. The plaintiff may satisfy this burden without `detailed market analysis' by `offering proof of actual detrimental effects, such as a reduction of output'." The plaintiff in Capital Imaging had failed to meet its initial burden of showing that the defendant's activities have had an adverse impact on price, quality, or output of medical services offered to consumers in the relevant market. It is only after that initial burden is met that the antitrust defendant must offer evidence to exonerate its conduct such as pro competitive justifications for its conduct., id page 547.
My problem here is that the plaintiffs have not offered any evidence to meet their initial burden of showing an adverse impact on price, quality, or output of chiropractic services offered to consumers in the relevant market — i.e. the plan beneficiaries.[2] On this basis alone I conclude there is a non-ERISA basis for granting the defendant's summary judgment motion as to the fourth count.
In any event based on the ERISA analysis the court grants the defendant's motion for summary judgment as to all counts and also grants the motion as to the third and fourth counts on non-ERISA grounds.
Thomas Corradino, Judge