**AETNA LIFE INSURANCE COMPANY,**
**Plaintiff–Appellee,**

v.

**Francisco L. BORGES, Treasurer of the State of Connecticut, and State of Connecticut, Defendants–Appellants.**

**No. 658, Docket 88–7843.**

United States Court of Appeals,
Second Circuit.

Argued Jan. 25, 1989.
Decided Feb. 23, 1989.

Carl J. Schuman, Asst. Atty. Gen., Hartford, Conn. (Joseph I. Lieberman, Atty. Gen., William J. Prensky, Asst. Atty. Gen., Hartford, Conn., on the brief), for defendants-appellants.

Allan B. Taylor, Hartford, Conn. (Ann McClure, Day, Berry & Howard, Hartford, Conn., on the brief), for plaintiff-appellee.

Before NEWMAN, PIERCE and MAHONEY, Circuit Judges.

JON O. NEWMAN, Circuit Judge:

On this appeal, we once again confront the often litigated issue of the scope of federal preemption under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001–1461 (1982 & Supp. IV 1986). The question presented is whether ERISA preempts the application of Connecticut's escheat law to ERISA-covered benefit checks and drafts that have been issued but have not been collected or presented for payment by the beneficiaries. The Treasurer and the State of Connecticut appeal from a judgment of the District Court for the District of Connecticut (Alan H. Nevas, Judge) summarily approving a magistrate's recommended ruling that the escheat law is preempted. *Aetna Life Insurance Co. v. Parker*, 692 F.Supp. 94 (D.Conn.1988). We reverse and remand.

## Background

The stipulated facts are as follows. Appellee Aetna Life Insurance Company ("Aetna") contracts with employers to provide group health and accident insurance coverage to employees. The benefit plans at issue here are covered by ERISA, the federal law regulating pension and other employee benefit programs. The premium that Aetna charges to employers is based on each employer's "experience rating"— that is, it is related to the cost of providing benefits to the employees of that company in previous years. The more benefits paid out under a plan, the higher the premium will be for the employer.

Not infrequently, after Aetna approves an employee's claim for benefits and issues a draft on an Aetna account to pay the claim, the employee fails to present the draft for payment. The draft then remains on Aetna's records as outstanding. Aetna has no specific deadline for presenting uncollected drafts, but its policy has been to honor drafts for longer than three years.

Aetna generally calculates the experience rating of employers on the basis of checks presented for payment ("presented basis" accounting) rather than on all checks that have been issued ("issued basis" accounting). A small reserve to cover unpresented drafts that may be collected in the future is also figured into the calculation of premium cost, again based on the experience of the particular plan. The amount reserved is a small percentage of the total amount of all unpresented checks.

Most other insurers in Connecticut use issued basis accounting. To the extent that issued basis accounting may lead to higher premiums, Aetna enjoys a competitive marketing advantage over its competitors.

In 1981, Connecticut revised its abandoned property laws, changing the time period for abandonment from seven years to three years. Conn.Gen.Stat. § 3–64a (1987). After property is abandoned, the holder must deliver it to the state treasurer, and the holder is then relieved of liability for claims to the property. The owner has twenty years to file a claim for the property with the State. After twenty years, the State can begin escheat proceedings. Conn.Gen.Stat. § 3–72a.

Pursuant to the new law, the State determined that Aetna had uncollected drafts for ERISA-covered benefits totaling more than $2.5 million. The State instituted proceedings in state court to recover the money from Aetna. Aetna filed suit in the District Court for the District of Connecticut seeking an injunction and a declaratory judgment that ERISA preempts the application of the escheat law to ERISA-covered benefit plans. Federal question jurisdic-

tion was properly invoked. *See Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96 n. 14, 103 S.Ct. 2890, 2899 n. 14, 77 L.Ed.2d 490 (1983). The parties stipulated to the facts and filed cross-motions for summary judgment.

Magistrate Joan Glazer Margolis wrote a recommended ruling that the escheat law was preempted, and Judge Nevas adopted the opinion. Judge Nevas entered judgment for Aetna on its prayer for declaratory relief and denied the claim for injunctive relief without prejudice.

The Magistrate's opinion determined that the escheat law is preempted because it has too great an impact on the administration of ERISA plans. The Magistrate noted that in a similar case, the Michigan Court of Appeals ruled that the State of Michigan's escheat law was not preempted by ERISA. *Attorney General v. Blue Cross & Blue Shield*, 168 Mich.App. 372, 424 N.W.2d 54 (1988). But the Magistrate believed that the factual record was not as fully developed in the Michigan case and that the impact on the administration of ERISA plans was not as clear.

## Discussion

ERISA is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans. *See Shaw v. Delta Air Lines, Inc., supra*, 463 U.S. at 90, 103 S.Ct. at 2896. The statute does not mandate that employers provide any particular benefits. But for employers that do provide certain pension and welfare benefits, ERISA imposes participation, funding, and vesting requirements, 29 U.S.C. §§ 1051–1086, and sets various uniform standards, including rules concerning reporting, disclosure, and fiduciary responsibility. 29 U.S.C. §§ 1021–1031, 1104–1114. The statute does not prescribe any particular procedure for the handling of benefits that are awarded but uncollected, nor does it specify a time limit for honoring such claims.

The statute also includes an express pre-emption provision. Section 514(a) of ERISA provides that the statute "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by the statute. 29 U.S.C. § 1144(a).[1]

■ The purpose of Congress is the ultimate touchstone in determining whether a federal law preempts a state law. *Pilot Life Insurance Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 1552, 95 L.Ed.2d 39 (1987). We must seek to give effect to the "full purposes and objectives" of federal statutes. *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941). At the same time, we must assume "that the historic police powers of the States were not to be superseded by [a] Federal Act unless that was the clear and manifest purpose of Congress." *Ray v. Atlantic Richfield Co.*, 435 U.S. 151, 157, 98 S.Ct. 988, 994, 55 L.Ed.2d 179 (1978) (quotation omitted).

■ The Supreme Court has examined the scope of ERISA preemption on several occasions. The Court has stated that "the express pre-emption provisions of ERISA are deliberately expansive, and designed to 'establish pension plan regulation as exclusively a federal concern.'" *Pilot Life Insurance Co. v. Dedeaux, supra*, 107 S.Ct. at 1552 (quoting *Alessi v. Raybestos–Manhattan, Inc.*, 451 U.S. 504, 523, 101 S.Ct. 1895, 1906, 68 L.Ed.2d 402 (1981)). The words "relate to" in section 514(a) are to be interpreted broadly; ERISA does not preempt only state laws specifically designed to affect employee benefit plans or dealing with the subject matters covered by ERISA—reporting, disclosure, fiduciary responsibility, and the like. *Shaw v. Delta Air Lines, Inc., supra*, 463 U.S. at 98, 103 S.Ct. at 2900.

The Supreme Court recently elaborated on the purposes of ERISA's preemption provisions:

1. The statute also creates specific exceptions to this preemption provision for generally applicable criminal laws, 29 U.S.C. § 1144(b)(4), and laws that regulate insurance, banking, or securities, 29 U.S.C. § 1144(b)(2)(A), but neither of these exceptions are applicable to this case. Connecticut argued unsuccessfully in the District Court that its escheat law regulated insurance, but it has not renewed that argument on appeal.

An employer that makes a commitment systematically to pay certain benefits undertakes a host of obligations, such as determining the eligibility of claimants, calculating benefit levels, making disbursements, monitoring the availability of funds for benefit payments, and keeping appropriate records in order to comply with applicable reporting requirements. The most efficient way to meet these responsibilities is to establish a uniform administrative scheme, which provides a set of standard procedures to guide processing of claims and disbursement of benefits. Such a system is difficult to achieve, however, if a benefit plan is subject to differing regulatory requirements in differing States. A plan would be required to keep certain records in some States but not in others; to make certain benefits available in some States but not in others; to process claims in a certain way in some States but not in others; and to comply with certain fiduciary standards in some States but not in others.

. . . .

It is thus clear that ERISA's pre-emption provision was prompted by recognition that employers establishing and maintaining employee benefit plans are faced with the task of coordinating complex administrative activities. A patchwork scheme of regulation would introduce considerable inefficiencies in benefit program operation, which might lead those employers with existing plans to reduce benefits, and those without such plans to refrain from adopting them. Pre-emption ensures that the administrative practices of a benefit plan will be governed by only a single set of regulations.

*Fort Halifax Packing Co. v. Coyne,* 482 U.S. 1, 107 S.Ct. 2211, 2216–17, 96 L.Ed.2d 1 (1987).

The Court has also recognized, however, that Congress, in seeking to preempt all state laws that "relate to" employee benefit plans, could not possibly have meant to preempt all laws having any impact on such plans, no matter how small or how tangential. "Some state actions may af-fect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." *Shaw v. Delta Air Lines, Inc., supra,* 463 U.S. at 100 n. 21, 103 S.Ct. at 2901 n. 21. *Shaw* cited as an example *American Telephone and Telegraph Co. v. Merry,* 592 F.2d 118, 121 (2d Cir.1979), in which this Circuit held that ERISA did not preempt state garnishment of pension income to enforce alimony and support orders.

As we have stated before, the reason we cannot interpret ERISA as preempting state statutes whose effect on pension plans is tangential and remote is "a matter of common sense." *Rebaldo v. Cuomo,* 749 F.2d 133, 138 (2d Cir.1984), *cert. denied,* 472 U.S. 1008, 105 S.Ct. 2702, 86 L.Ed.2d 718 (1985).

> ... ERISA plan members and managers are bound to engage in myriad transactions that Congress never considered when it drafted § 514. A preemption provision designed to prevent state interference with federal control of ERISA plans does not require the creation of a fully insulated legal world that excludes these plans from regulation of any purely local transaction.

*Id.* As we noted in *Rebaldo,* many state laws affect the cost and administration of pension plans: labor laws that govern working conditions and labor costs, rent control laws that determine what employee benefit plans pay or receive for rental property, and even highway and bridge tolls charged to plans' officers or employees. "[I]f ERISA is held to invalidate every State action that may increase the cost of operating employee benefit plans, those plans will be permitted a charmed existence that never was contemplated by Congress." *Id.* at 138–39.

Admittedly, the distinction between state laws that "relate to" employee benefit plans and those that have only a "tenuous, remote, or peripheral" impact is not always clear. One way to bring the distinction into focus is to compare the types of state laws that courts have found to be preempted with those that have survived challenge on preemption grounds.

State laws, or actions pursuant to state law, that have been preempted include: common law tort and contract actions asserting improper processing of a claim for benefits under an ERISA-covered benefit program, *Pilot Life Insurance Co. v. Dedeaux, supra;* a law specifically exempting ERISA-covered benefits from a generally applicable state garnishment law, *Mackey v. Lanier Collections Agency & Service, Inc.,* —— U.S. ——, 108 S.Ct. 2182, 2185, 100 L.Ed.2d 836 (1988); a law forbidding discrimination in employee benefit programs on the basis of pregnancy, *Shaw v. Delta Air Lines, Inc., supra;* and a law prohibiting offsets of worker compensation payments against pension benefits, *Alessi v. Raybestos–Manhattan, Inc., supra.*

State laws that have been ruled not preempted include: a generally applicable garnishment law under which creditors can garnish ERISA welfare benefits, *Mackey v. Lanier Collections Agency & Service, Inc., supra,* 108 S.Ct. at 2185–91;[2] a law requiring companies to make lump-sum severance payments when closing a plant, *Fort Halifax Packing Co. v. Coyne, supra;* a law prescribing what hospitals can charge for in-patient care, thereby preventing benefit plans from negotiating their own discount rates with hospitals, *Rebaldo v. Cuomo, supra;* and a city income tax of general application that affects employee contributions to benefit plans, *Firestone Tire & Rubber Co. v. Neusser,* 810 F.2d 550 (6th Cir.1987).

■ Generalizing from these cases, we find that laws that have been ruled preempted are those that provide an alternative cause of action to employees to collect benefits protected by ERISA, refer specifically to ERISA plans and apply solely to them, or interfere with the calculation of benefits owed to an employee. Those that have not been preempted are laws of general application—often traditional exer-

cises of state power or regulatory authority—whose effect on ERISA plans is incidental.

In *Rebaldo,* we further defined what constitutes incidental impact. We noted that indirect economic impact alone did not conflict with ERISA's aim of national uniformity in plan regulation because there is "no valid reason why employee benefit plans cannot be subject to nationally uniform supervision despite dissimilarities in their costs of doing business." 749 F.2d at 139. We said that where a state statute of general application "does not affect the structure, the administration, or the type of benefits provided by an ERISA plan, the mere fact that the statute has some economic impact on the plan does not require that the statute be invalidated." *Id.*

In focusing on the impact on "the structure, the administration, or the type of benefits provided by an ERISA plan," we did not mean that any impact in these areas, no matter how peripheral, was sufficient to trigger preemption. As with economic impact, many state laws of general application have some minimal, indirect impact on the administration of benefit plans, including laws that have been held not preempted.

In *Rebaldo* itself, for example, the state law we found not preempted precluded benefit plans from negotiating discount rates with hospitals, which would force plans to operate differently in that state than they might in other states. Similarly, the state garnishment law upheld in *Mackey,* allowing creditors to garnish ERISA welfare benefits, would also require local adjustments in plan administration.

■ What triggers ERISA preemption is not just any indirect effect on administrative procedures but rather an effect on the primary administrative functions of benefit plans, such as determining an employee's

2. *Mackey* did not uphold the garnishment law on the ground that its effect was tangential. Rather, the Court found that Congress explicitly permitted ERISA plans to sue and be sued, implying that they must be subject to mechanisms to enforce judgments. The Court found no reason to assume that plan beneficiaries would not be subject to similar enforcement mechanisms. Although the Court's reasoning in *Mackey* does not apply to the case at bar, *Mackey* nonetheless provides an example of a state statute with an indirect effect on ERISA plans that the Court did not find inconsistent with ERISA.

eligibility for a benefit and the amount of that benefit. In neither *Rebaldo* nor *Mackey* did the state law at issue affect the calculation of benefits.[3] In *Alessi v. Raybestos–Manhattan, Inc., supra,* on the other hand, the state law at issue "eliminate[d] one method for calculating pension benefits ... that is permitted by federal law," *id.* 451 U.S. at 524, 101 S.Ct. at 1906, and for that reason was held preempted. Similarly, in *Gilbert v. Burlington Industries, Inc.,* 765 F.2d 320 (2d Cir.1985), *aff'd,* 477 U.S. 901, 106 S.Ct. 3267, 91 L.Ed.2d 558 (1986), we held that ERISA preempted a state severance pay law that would "determine whether any benefits are paid, and directly affect the administration of benefits under the plan." *Id.* at 327.[4] This is the kind of impact that would create a "patchwork scheme of regulation" among the several states, *Fort Halifax Packing Co. v. Coyne,* 107 S.Ct. at 2217, significantly interfering with the goal of ERISA to provide uniform, national regulation of benefit plans.

■ Applying these principles to this case, we think that the impact of Connecticut's escheat law on ERISA benefit plans is too tenuous, remote, and peripheral to require preemption under section 514(a). The Connecticut law does not focus specifically on ERISA plans or benefits; it applies to lost or abandoned property generally. Indeed, escheat of abandoned property is an area of traditional state authority, *see Connecticut Mutual Life Insurance Co. v. Moore,* 333 U.S. 541, 547, 68 S.Ct. 682, 686, 92 L.Ed. 863 (1948), exercised by virtually every state. *See* Unif. Unclaimed Property Act, Prefatory Note, 8A U.L.A. 617 (1983); *see generally* McThenia & Epstein, *Issues of Sovereignty in Escheat and the Uniform Unclaimed Property Act,* 40 Wash. & Lee L.Rev. 1429, 1430–33 (1983). In

deference to state prerogatives within the federal system, we must not find such a traditional exercise of state power preempted unless the conclusion is "unavoidable." *Rebaldo v. Cuomo, supra,* 749 F.2d at 138.

Connecticut's escheat law has both an economic and administrative impact on ERISA plans. Aetna will have to pay all unclaimed benefits to the State after three years. We accept Aetna's contention that this will force it to include this cost in the experience rating of the employers it services, thus increasing the cost of providing benefits. Presumably that cost will ultimately be reflected in higher premiums for employers, lower benefits for employees, lower profits for Aetna, or some combination of these consequences. Aetna will also have to make administrative and accounting adjustments to comply with the law, adjustments that would be different in other states where the statutory time period for escheat differs.

These indirect economic and administrative effects are not substantial enough, however, to persuade us that this is the type of law Congress intended to preempt. The escheat law has no effect on Aetna's original determination of an employee's eligibility for benefits. The indirect economic and administrative impact is of a kind similar to that of a garnishment law, which allows creditors to seize benefits before an employee ever receives them. For the employee the cash impact is far less: An escheat law at worst forecloses his opportunity for payment only after the state law claim period, here, twenty years; garnishment immediately precludes his receipt of money, though, of course, it reduces his indebtedness. Moreover, escheat poses no greater threat of inconsistency among state laws than does garnishment. Absent more specific direction from Congress, we

---

**3.** The state garnishment law in *Mackey* enables creditors to attach benefits *after* a plan determined the amount of benefits the employee was eligible to receive. It does not affect a plan's initial calculation of an employee's benefits.

**4.** Another similar example is *MacLean v. Ford Motor Co.,* 831 F.2d 723 (7th Cir.1987), which held that ERISA preempts state testamentary law to the extent that such law would require an

ERISA plan to pay accumulated benefits to a testator's legatee, rather than to the beneficiary designated under the plan. The Seventh Circuit said, "When, as here, the terms of an employee pension plan under ERISA provide a valid method *for determining the beneficiary,* that mechanism cannot be displaced by the provisions of a will." *Id.* at 728 (emphasis added).

can safely assume that Congress did not intend to create an exception to this traditional exercise of state authority.

Magistrate Margolis correctly noted that the fact that the escheat law involved the traditional exercise of state police power was not itself sufficient to vitiate ERISA's preemptive effect. *See Gilbert v. Burlington Industries, Inc., supra,* 765 F.2d at 327. We disagree with her conclusion, however, that the indirect impact requires preemption.

The Magistrate noted three ways in which the escheat law would impact on Aetna's administration of ERISA plans: (1) it would have an economic impact, since Aetna would have to include claims escheated to the State in the experience rating of employers; (2) it would affect relations with principal ERISA entities, in that beneficiaries who did not claim their benefits for three years would thereafter have to seek payment from the State, rather than from Aetna; and (3) it would impose a different, more elaborate procedure on beneficiaries to collect their claim from the State, rather than presenting an uncollected draft for payment.[5]

Accepting these factual findings, we nevertheless disagree that these effects are sufficient to trigger preemption. As discussed above, indirect economic impact alone is not sufficient. The intrusion in the relationship between Aetna and plan beneficiaries is no greater than that posed by the garnishment laws in *Mackey* and *Merry*.[6] Nor are the procedures for recovering claims held by the State so much more complex than the procedures for collecting a more than three-year-old draft as to require preemption.[7] Both procedures essentially involve a presentation of proper identification. The fact that the law requires the State to engage in extra paperwork and verification procedures does not necessarily increase the administrative burden on either plans or beneficiaries.

Aetna further contends that Connecticut's escheat law is preempted by section 502(a) of ERISA, which provides a federal cause of action for ERISA plan participants and beneficiaries to recover benefits due under the terms of an ERISA plan. 29 U.S.C. § 1132(a). The Supreme Court has held that section 502(a) is the exclusive vehicle for such actions and may not be supplemented by suits under state law. *See Pilot Life Insurance Co. v. Dedeaux, supra,* 107 S.Ct. at 1558. We do not find, however, that Connecticut's escheat law provides beneficiaries with an alternative cause of action for recovering benefits. The escheat law affects only the proce-

---

5. The Magistrate also relied on the Eleventh Circuit's ruling in *Blue Cross & Blue Shield v. Department of Banking and Finance,* 791 F.2d 1501 (11th Cir.1986), that a state escheat law was preempted by the preemption provision of 5 U.S.C. § 8902(m)(1) (1982), which provides:

> The provisions of any contract under this chapter which relates to the nature or extent of coverage or benefits ... shall supersede and preempt any State or local law, or any regulation issued thereunder, which relates to health insurance or plans to the extent that such law or regulation is inconsistent with such contractual provisions.

We do not think our conclusion that ERISA does not preempt Connecticut's escheat statute is inconsistent with the Eleventh Circuit's interpretation of section 8902(m)(1). Although the term "relates to" in that provision is similar to the broad "relate to" language of section 514(a) of ERISA, section 8902(m)(1) is much more narrowly targeted. It explicitly preempts state laws only to the extent that they are inconsistent with provisions of a federal contract. Thus, there is no need for the kind of implied excep-

tion for laws with only a tenuous or remote impact that the less focused ERISA provision demands.

6. This is not to say that the impact of an escheat law could never be great enough to trigger preemption. For example, if state legislation required that all unclaimed drafts escheat to the state after one week, the impact on beneficiaries might be substantial enough to require preemption. But we do not think that Connecticut's three-year period significantly impairs the rights of beneficiaries. Indeed, by providing that beneficiaries may collect their benefits from the State for up to twenty years, the statute may aid beneficiaries.

7. We are not as certain as the Magistrate that it is a simple matter to present for payment a draft outstanding for a considerable length of time. The bank on which the draft was drawn would likely decline to honor it. It may be, however, that presentation to the drawer, here Aetna, results in somewhat more expeditious payment than presentation of a claim to the State under the escheat law.

dures for collecting benefits after a draft has already been issued. It does not provide a civil action governing the issuance of drafts in the first instance.

### Conclusion

We hold that ERISA does not preempt Connecticut's escheat law as it applies to uncollected drafts for employee benefits. We therefore reverse the judgment of the District Court and remand for proceedings consistent with this opinion.