Alex N. HATTEM, solely in his capacity as a participant in a pension plan funded by The Long-term Investment Trust, AT & T Investment Management Corporation, not in its individual capacity, but solely in its capacity as The Long-term Investment Trust's "named fiduciary," and JPMorgan Chase Bank, not in its individual capacity but solely in its capacity as trustee for The Long-term Investment Trust, Plaintiffs–Appellants,

v.

Arnold SCHWARZENEGGER, in his official capacity as Governor of the State of California, Selvi Stanislaus, in his official capacity as Interim Executive Officer of The California Franchise Tax Board, Desmond Press, in his official capacity as Program Manager of The California Franchise Tax Board, and Does 1–10, Defendants–Appellees.

Docket No. 05–3926–cv.

United States Court of Appeals,
Second Circuit.

Argued: Feb. 7, 2006.

Decided: May 23, 2006.

Ethan Lipsig, Paul, Hastings, Janofsky, & Walker, LLP, (Kevin C. Logue, Patrick W. Shea, on the brief) Los Angeles, CA, for Plaintiffs–Appellants.

Stephen Lew, Deputy Attorney General for the State of California, (Bill Lockyer, Attorney General, W. Dean Freeman, Lead Supervising Deputy Attorney General, Donald R. Currier, Deputy Attorney General, on the brief), Los Angeles, CA, for Defendants–Appellees.

Before: POOLER, B.D. PARKER, Circuit Judges, and CHIN, District Judge.[1]

POOLER, Circuit Judge.

Plaintiffs-appellants Alex N. Hattem et al. (plaintiffs-appellants) appeal from a June 15, 2005, decision of the United States District Court for the Southern District of New York (Lynch, J.) granting summary judgment in favor of defendants-appellees Arnold Schwarzenegger et al. (defendants-appellees) and denying plaintiffs-appellants' cross motion for summary judgment, *Hattem v. Schwarzenegger*, No. 04–cv–1944, 2005 WL 1459103, at *6 (S.D.N.Y. June 17, 2005). The district court granted summary judgment after holding that the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 et seq., does not preempt California's tax on unrelated business taxable income ("UBTI"). *See id.* at *5–6. The court also found that such a claim of preemption is not barred by the Tax Injunction Act ("TIA"), 28 U.S.C. § 1341. *See id.* at *2.

On appeal, plaintiffs-appellants argue that the district court erred by finding that ERISA does not preempt California's UBTI system, and they urge this court to find the state law preempted. Defendants-appellees also challenge the decision of the district court by raising an alternative basis—one rejected by the district court—to support the grant of summary judgment. They contend that summary judgment is proper because the TIA precludes the suit. According to defendants-appellees, the TIA bars the claim because plaintiffs-appellants have a "plain, speedy, and efficient" remedy in state court. For

---

**1.** The Honorable Denny Chin of the United States District Court for the Southern District of New York sitting by designation.

the reasons discussed below, we disagree with both plaintiffs-appellants' and defendants-appellees' positions on appeal. We therefore affirm the decision of the district court in toto and uphold the grant of summary judgment in favor of defendants-appellees.

## BACKGROUND

In 1984, AT & T Corporation established the AT & T Master Pension Trust ("Trust"), which has the sole purpose of holding and managing the assets of various ERISA-covered pension plans established and maintained by AT & T. The Trust is a qualified tax-exempt trust under the federal, Internal Revenue Code ("IRC"). However, it is responsible for paying federal taxes on its UBTI. Some of this UBTI is generated by the Trust's investments. Because of this, the Trust files federal tax returns and pays federal taxes when required.

The State of California—like many other states—maintains a UBTI scheme similar to that found in the IRC. *Compare, e.g.,* Cal. Rev. & Tax Code §§ 17651, 17631, 23731 *with* 26 U.S.C. §§ 501, 511, 401.[2] The primary purpose, aside from raising revenue, behind both the federal and state UBTI schemes is the same: UBTI laws serve to even the playing field among tax-exempt organizations and their for-profit rivals. They accomplish this by ensuring that tax-exempt entities pay taxes on revenue unrelated to their tax-exempt purpose. That way, tax-exempt organizations do not receive an unfair advantage in the market based on an unrelated-tax-exempt purpose.

The Trust is tax exempt under California law just as it is under the IRC; thus, it pays state tax only on its UBTI. Since 1994, the Trust, which has approximately twenty-billion dollars of investments, has paid $6,149,438.29 in UBTI to California. According to plaintiffs-appellants, the Trust has forgone an unquantifiable amount of income by avoiding UBTI-generating investments. The Trust also claims that it has incurred substantial administrative and fiduciary burdens as a result of the California UBTI system because it has been forced to expend time and resources determining when to avoid certain investments that may generate state UBTI. According to the Trust, these burdens divert the Trust's resources away from fulfilling its primary function, which is providing retirement income to many retirees.

Plaintiffs-appellants challenge California's UBTI system, arguing that ERISA preempts California's right to maintain it. The district court disagreed with plaintiffs-appellants. It held that ERISA does not preempt California's UBTI system, and it granted summary judgment in favor of defendants-appellees. *See Hattem,* 2005 WL 1459103, at *5–6.

On appeal, plaintiffs-appellants contend that the district court erroneously granted summary judgment in favor of defendants-appellees. Defendants-appellees of course disagree, claiming both that plaintiffs-appellants' preemption claim is barred by the TIA—an argument rejected by the district court, *see id.* at *2,—and that ERISA does not bar California's tax on UBTI.

We disagree that the TIA bars the preemption claim, and we hold that ERISA does not preempt California's UBTI system. We therefore affirm the district court in all respects.

---

**2.** Although this is true in the instant case, other states' UBTI systems may differ more significantly from the federal system. This decision is not limited to state schemes mirroring the federal one.

## DISCUSSION

### I. The Tax Injunction Act

The district court determined that plaintiffs-appellants' ERISA preemption claim was not barred by the TIA. *See id.* The TIA, 28 U.S.C. § 1341, states that "district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." *Id.* According to the Supreme Court, the purpose of the TIA is "to limit drastically federal district court jurisdiction to interfere with so important a local concern as the collection of taxes." *California v. Grace Brethren Church,* 457 U.S. 393, 408–09, 102 S.Ct. 2498, 73 L.Ed.2d 93 (1982) (internal quotation marks and citation omitted). Because of this, the Court has noted that the TIA prohibits, in most circumstances, a federal district court from issuing an injunction preventing the collection of state taxes. *Id.* at 408, 102 S.Ct. 2498. The Court has also held that the TIA prohibits a district court from issuing a declaratory judgment holding state-tax laws unconstitutional. *Id.*

■ We have explained that two conditions must exist before the TIA can be invoked. *See Travelers Ins. Co. v. Cuomo,* 14 F.3d 708, 713 (2d Cir.1994) [hereinafter *Cuomo*], *rev'd on other grounds,* N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995) [hereinafter *Travelers* ].[3] "[F]irst, the surcharges must constitute 'taxes,' and second, the state remedies available to plaintiffs must be 'plain, speedy and efficient.'" *Id.* (internal footnote omitted). Neither party disputes that the tax on UBTI constitutes "taxes" as the term relates to the TIA.

■ As to the second requirement, that the TIA bars federal review only when there is a "plain, speedy and efficient" remedy in state court, we have clearly held that in cases involving ERISA, such a state remedy is lacking. *Id.* at 714. In *Cuomo,* we explained that ERISA dictates that federal courts maintain exclusive jurisdiction over actions such as those determining whether a state's tax system is preempted by ERISA. *See id.* Therefore, a "plain, speedy and efficient" remedy is lacking in state court as to such claims, and the TIA does not bar suit in federal court.[4] *Id.* For these reasons, we

**3.** In overruling *Cuomo,* the Supreme Court made clear in *Travelers* that it was not disturbing our holding regarding the TIA. *See id.* at 652 n. 4, 115 S.Ct. 1671. In *Travelers,* the Court noted that both the district court and appellate court assumed that the surcharges at issue were taxes and then found that because no "plain, speedy, and efficient remedy" existed in state court, the TIA did not bar the federal court from considering whether these "taxes" were preempted by ERISA. *Id.* According to the Supreme Court, "[n]either party challenged this conclusion and [the Supreme Court had] no occasion to examine it" on appeal. *Id.* It is thus clear that *Cuomo* remains good law for the proposition cited.

**4.** Defendants-appellees' argument to the contrary is based on authority from the Seventh

and Ninth Circuits. *See Darne v. Wis. Dep't of Revenue,* 137 F.3d 484 (7th Cir.1998); *Ashton v. Cory,* 780 F.2d 816 (9th Cir.1986). Given the clear Second Circuit precedent on this issue, these authorities are of no moment.

Defendants-appellees also cite a Supreme Court case, *Franchise Tax Board v. Alcan Aluminium Ltd.,* 493 U.S. 331, 110 S.Ct. 661, 107 L.Ed.2d 696 (1990), to support their argument that suit is barred by the TIA. In *Franchise Tax Board,* the Supreme Court declared that "[t]o the extent they are available, California's refund procedures constitute a plain, speedy, and efficient remedy." *Id.* at 338, 110 S.Ct. 661. First, it should be noted that *Franchise Tax Board* was decided *prior to* our decision in *Cuomo* in which we addressed the specific issue in question and held that the TIA *does not* bar a claim that state-tax law is

agree with the district court that the TIA does not bar plaintiffs-appellants' claim that California's UBTI system is preempted by ERISA.

## II. ERISA Preemption

ERISA preempts state law in certain circumstances. According to 29 U.S.C. § 1144(a), "the provisions of [ERISA] shall supersede any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan." *Id.* (emphasis added). Although a plain reading of this statute lends itself to an extremely broad interpretation, the Supreme Court has greatly narrowed the scope of this section.

The Court applied such a narrowed interpretation in *Travelers,* 514 U.S. at 655–56, 115 S.Ct. 1671. In that case, the Court considered whether ERISA "pre-empts the state provisions for surcharges on bills of patients whose commercial insurance coverage is purchased by employee health-care plans governed by ERISA, and for surcharges on HMO's insofar as their membership fees are paid by an ERISA plan." *Id.* at 649, 115 S.Ct. 1671. Under the surcharge system at issue, different surcharges were added to individuals' hospital bills depending on the health-insurance provider. *See id.* at 650, 115 S.Ct. 1671. The Court decided that this scheme did not violate ERISA, holding that "the provisions for surcharges do not 'relate to' employee benefits plans within the meaning of ERISA's pre-emption provision." *Id.* at 649, 115 S.Ct. 1671.

In reaching this decision, the Court declined to interpret "relate to" literally. *See id.* at 655, 115 S.Ct. 1671. It explained that to interpret the term literally would render Congress's words of limitation a mere sham. *Id.* Instead, the Court concluded that a law relates to an employee benefit plan, within the meaning of 29 U.S.C. § 1144(a), if it has a "connection with" or "reference to" such a plan. *Id.* at 656, 115 S.Ct. 1671.

In determining whether a given state law has the impermissible "connection with" or "reference to" such a plan, the Supreme Court *began* its analysis noting that "[it has] never assumed lightly that Congress has derogated state regulation, but instead [has] addressed claims of pre-emption with the starting presumption that Congress does not intend to supplant state law." *Id.* at 654, 115 S.Ct. 1671. Specifically, "the historic police powers of the States were not to be superseded by [ERISA] unless that was the clear and manifest purpose of Congress." *Id.* at 655, 115 S.Ct. 1671 (internal quotation marks and citation omitted). In light of this heavy burden and precedent controlling in this Circuit, it is clear that California's tax on UBTI is not preempted by ERISA because it has neither a "connection with"

preempted by ERISA. We thus presume that this Court considered the then-existing Supreme Court precedent when rendering its decision in *Cuomo.*

Second, *Franchise Tax Board* is distinguishable because it did not involve a situation like the instant case where the challenge to the tax laws stemmed from a matter over which the federal courts had exclusive jurisdiction. *See id.* at 340–41, 110 S.Ct. 661. In finding that a "plain, speedy, and efficient" remedy existed in the California state courts, the Supreme Court noted that there was no reason to doubt that the California courts would entertain de-

fendants' foreign commerce clause arguments, which were the basis on which they contested the validity of the tax. *Id.* at 341, 110 S.Ct. 661. Because of this, defendants could not escape the TIA. *See id.* The same cannot be said in the instant case where a state court may not entertain such preemption arguments. Finally, we note that the Supreme Court appears to have sanctioned the Second Circuit's determination that actions such as the instant one are not barred by the TIA. *See De Buono v. NYSA–ILA Med. & Clinical Servs. Fund,* 520 U.S. 806, 810 n. 5, 117 S.Ct. 1747, 138 L.Ed.2d 21 (1997).

nor a "reference to" an employee benefit plan.

### A. The "connection with" prong.

 In determining whether a "connection with" exists, we look to the objectives of the ERISA statute as a guide. *Id.* at 656, 115 S.Ct. 1671. Congress intended ERISA to establish the regulation of employee-benefit plans as an exclusively federal concern. *Id.* Specifically, Congress aimed "to ensure that plans and plan sponsors would be subject to a uniform body of benefits law." *Id.* (internal quotation marks omitted). This minimizes the administrative and financial burdens of complying with conflicting directives from the states, and between the states and the federal government. *Id.* This was designed to prevent a conflict of substantive law that would require tailoring "plans and employer conduct to the peculiarities of the laws of each jurisdiction." *Id.* at 657, 115 S.Ct. 1671. In sum, the "basic thrust of the pre-emption clause, then, was to avoid multiplicity of regulation in order to permit the nationally uniform administration of employee benefit plans," *id.* at 657, 115 S.Ct. 1671, and to prevent frustrating plan administrators' obligations to calculate uniform benefit levels nationwide, *id.* at 658, 115 S.Ct. 1671.

In determining whether a particular state law runs afoul of these goals, the Court has instructed that preemption is not called for "if the state law has only a tenuous, remote, or peripheral connection with covered plans, *as is the case with many laws of general applicability.*" *Id.* at 661, 115 S.Ct. 1671 (emphasis added) (citation and internal quotation marks omitted). Furthermore, it is not sufficient that the law in question has an indirect economic effect on choices; rather, the law must actually dictate which choices *must*

be made. *See id.* at 659–62, 115 S.Ct. 1671.

For instance, in holding that a state-surcharge system was not preempted by ERISA, the Supreme Court, in *Travelers,* explained that although the surcharge might make certain insurance companies more attractive purchases, they have only an indirect economic effect, which does not reach the high threshold necessary for preemption. *See id.* at 659, 115 S.Ct. 1671. This is because an indirect economic influence does not actually bind plan administrators to any particular choice; thus, it does not function as a regulation of an ERISA plan itself. *See id.* "It is an influence that can affect a plan's shopping decisions, but it does not affect the fact that any plan will shop for the best deal it can get, surcharges or no surcharges." *Id.* at 660, 115 S.Ct. 1671. It is therefore insufficient that a law has the effect of increasing the costs associated with one purchase over another. *Id.* at 660–61, 115 S.Ct. 1671. "[C]ost uniformity was almost certainly not an object of pre-emption." *Id.* at 662, 115 S.Ct. 1671. Surcharges do nothing more than leave plan administrators in the same position they would be in irrespective of the surcharges—with the responsibility to choose the best overall coverage for the money. *Id.* This is true even if the surcharges impose administrative costs and burdens on benefit plans. *See id.* at 660–61, 115 S.Ct. 1671. Thus, neither an indirect source of administrative costs nor an indirect economic influence is a ground for preemption. *See id.* at 659–62, 115 S.Ct. 1671.

In so finding, however, the Court cautioned that "a state law might produce such acute, albeit indirect, economic effects, by intent or otherwise, as to force an ERISA plan to adopt a certain scheme," which might result in preemption. *Id.* at 668, 115 S.Ct. 1671. The Court explained

that the New York surcharges at issue in *Travelers* did not fit into this category because they only indirectly affected the relative price of insurance policies, and that is "no different from myriad state laws in areas traditionally subject to local regulation, which Congress could not possibly have intended to eliminate." *Id.*

In other cases, the Court has provided additional elaboration on the "connection with" test. For instance, in *Egelhoff v. Egelhoff,* 532 U.S. 141, 121 S.Ct. 1322, 149 L.Ed.2d 264 (2001), the Court found that a state law did have an impermissible "connection with" an employee benefit plan. *Id.* at 147, 121 S.Ct. 1322. The Washington statute at issue in *Egelhoff* revoked an individual's beneficiary status if the designation was made prior to a dissolution or invalidation of a marriage between the designator and the beneficiary. *Id.* at 144, 121 S.Ct. 1322. In finding the Washington statute preempted, the Court explained that the state law bound plan administrators to choose a particular beneficiary as dictated by state law, rather than as directed by the plan. *Id.* at 147–48, 121 S.Ct. 1322. The Court distinguished this case from cases like *Travelers,* explaining that *Egelhoff* is unlike cases involving generally applicable laws where ERISA has nothing to say about the issue and where the Court has upheld the law despite an incidental effect on ERISA plans. *Id.* Unlike these generally applicable laws, the law at issue in *Egelhoff* governed the payment of benefits, which is a central matter of plan administration. *Id.* at 148, 121 S.Ct. 1322.

The Court identified another distinction, which rendered the law at issue in *Egelhoff* as having the impermissible "connection with" ERISA plans: namely, the law interfered with a nationally uniform plan administration, the creation of which was another goal of ERISA. *Id.* at 148–50, 121

S.Ct. 1322. The law did this by dictating to whom the administrator must pay. *See id.* at 149–50, 121 S.Ct. 1322. Were a similar law adopted in every state, an administrator would face the laborious task of researching every state's law each time it needed to pay a beneficiary. *See id.* This would impose precisely the type of burden ERISA aimed to eliminate by creating a federal system enabling plan administrators to look simply to the plan to determine beneficiary status. *Id.* at 148–50, 121 S.Ct. 1322. Additionally, the law at issue in *Egelhoff* directly conflicted with ERISA's requirement that plans be administered in accordance with plan documents. *Id.* at 150, 121 S.Ct. 1322. For these reasons, the Court found the law preempted. *Id.* at 147–50, 121 S.Ct. 1322.

This Circuit has also defined the contours of "connection with" preemption. In a case decided *before* the Supreme Court *greatly narrowed* preemption in *Travelers,* this Court held that a state escheat law was not preempted by ERISA. *See Aetna Life Ins. Co. v. Borges,* 869 F.2d 142, 147 (2d Cir.1989). In so holding, this Court explained that the preemption provision "does not require the creation of a fully insulated legal world that excludes these plans from regulation of any purely local transaction." *Id.* at 145. Indeed, many state laws of general applicability affect the cost and administration of these plans, yet they are not preempted. *Id.* "If ERISA [were] held to invalidate every State action that may increase the cost of operating employee benefit plans, those plans will be permitted a charmed existence that never was contemplated by Congress." *Id.* (internal quotation marks and alterations omitted).

In determining whether a new law is preempted, we have found it helpful to examine prior laws that have *not* been preempted. *Id.* at 146. These laws in-

clude: (1) a generally applicable garnishment law under which creditors may garnish ERISA welfare benefits; (2) a law requiring companies to make lump-sum severance payments when closing a plant; (3) a law prescribing the amount that hospitals can charge for care; and (4) a city *income tax* of general application that affects employee contributions to benefit plans. *Id.* Generalizing from these cases, we found, in *Aetna Life*, that "laws that have been ruled preempted are those that provide an alternative cause of action to employees to collect benefits protected by ERISA, refer specifically to ERISA plans and apply solely to them, or interfere with the calculation of benefits owed to an employee." *Id.* Contrarily, "[t]hose that have not been preempted are laws of general application—often traditional exercises of state power or regulatory authority—whose effect on ERISA plans is incidental." *Id.*

We reviewed the issue again after the Supreme Court, in *Travelers,* remanded *Cuomo.* On remand, we found state surcharges on self-insured plans not preempted by ERISA. *See Travelers Ins. Co. v. Pataki,* 63 F.3d 89, 93–95 (2d Cir.1995) [hereinafter *Pataki].* In *Pataki,* we explained that a surcharge is no different than any other economic factor that weighs into a decision. *Id.* at 94. The surcharge simply affects the relative costs of the various alternatives. *Id.* Echoing the Supreme Court, we found determinative that the surcharges do not bind an administrator's decisions, rather they merely "affect a plan's shopping decisions." *Id.* at 92. Accordingly, "states may create rate differentials that influence such choices." *Id.* at 94.

More recently, we have expressed similar sentiments, noting that post-*Travelers,* there has been a significant change in preemption analysis that necessitates revamping our once-broad view of its scope. *See Gerosa v. Savasta & Co.,* 329 F.3d 317, 327 (2d Cir.2003). In *Gerosa,* we also noted that "state laws that would tend to control or supersede central ERISA functions—such as state laws affecting the determination of eligibility for benefits, amounts of benefits, or means of securing unpaid benefits—have typically been found to be preempted." *Id.* at 324.

This precedent makes clear that California's UBTI system does not have an impermissible "connection with" an ERISA plan and is therefore not preempted under this prong of the preemption test. In reaching this conclusion, we remain mindful that because taxation is a realm of historic state control, *see Ark. Corp. Comm'n v. Thompson,* 313 U.S. 132, 145, 61 S.Ct. 888, 85 L.Ed. 1244 (1941) (noting the "historic national policy of federal non-interference with the taxing power of states"), plaintiffs-appellants have a heavy burden to show that preemption exists. For the following reasons, we hold that this burden has not been satisfied.

First, California's law is one of general applicability. The California statute governing UBTI, Cal. Rev. & Tax. § 17651(b), states: "The tax ... shall apply in the case of *any trust* which is exempt" from taxation by Cal. Rev. & Tax. § 17631.[5] *Id.* (emphasis added). The statute clearly taxes any trust on its UBTI. *See* Cal. Rev. & Tax. § 17651(b). It does not single out ERISA trusts.

Second, although this law may have an indirect effect on choices, it does not force

---

**5.** Cal. Rev. & Tax. § 17631 is California's version of the federal, tax-exemption statute. Cal Rev. & Tax. § 17631 incorporates by reference the federal tax-exemption statute, 26 U.S.C. § 401. 26 U.S.C. § 401 lays out the bases for when an organization may obtain tax-exempt status under both the federal scheme and California's scheme.

trust fiduciaries to act in a certain manner. Just as surcharges become one factor making certain insurance carriers more or less desirable, a state tax resulting from certain investments simply makes those investments less attractive. The Trust, however, maintains ultimate control over the investment of its funds. Although investments generating state UBTI may be more costly and thus less worthwhile, the discretion remains with the fiduciary. Additionally, one can envision a scenario in which despite a state tax on UBTI, an investment generating such UBTI may still be more advantageous and thus chosen by a fiduciary. Any UBTI potentially generated simply provides one more factor that a fiduciary may weigh in determining which investments are best.

For these same reasons, the administrative costs of such a statute are slight and not the sort that would render a state statute preempted. A fiduciary determining how to invest money is already considering many factors, which undoubtedly include the predictable rate of return. It is therefore an insignificant, administrative burden for the fiduciary to consider also that the rate of return may be reduced or even depleted by any applicable UBTI tax.

Finally, this statute does not govern one of the areas that has been found to be of the kind that ERISA was intended to control exclusively. For instance, it does not affect the determination of eligibility of beneficiaries. It does not mandate the amount of benefits, nor does it dictate the means for securing unpaid benefits. As the Supreme Court noted in rejecting an ERISA preemption argument in *De Buono v. NYSA–ILA Medical & Clinical Services*

*Fund*, "[t]his is not a case in which [the State] has forbidden a method of calculating pension benefits that federal law permits, or required employers to provide certain benefits." 520 U.S. 806, 814–15, 117 S.Ct. 1747, 138 L.Ed.2d 21 (1997). It is not a case "in which the existence of a pension plan is a critical element of a state-law cause of action, or one in which the state statute contains provisions that expressly refer to ERISA or ERISA plans." *Id.* at 815, 117 S.Ct. 1747. Of course, preemption is not limited to these areas, and preemption may occur when acute—even indirect—economic effects occur as a result of the law. *See Travelers*, 514 U.S. at 668, 115 S.Ct. 1671. California's UBTI law, however, is not such a case that satisfies this high standard for preemption, given the current state of the law post-*Travelers*.

**B. The "reference to" prong.**

■■■ We again begin our analysis mindful of the presumption against preemption in areas of historical state control.[6] While singling out ERISA plans for special treatment is considered a "reference," simply mentioning the word "ERISA" is not. *See New Eng. Health Care Employees Union v. Mount Sinai Hosp.*, 65 F.3d 1024, 1032 (2d Cir.1995). In *New England Health Care*, we held that ERISA did not preempt a statute that imposed a state surcharge on all hospital patients with private insurance despite that the statute expressly mentioned "ERISA." *Id.* We also explained that ERISA does not "preempt[ ] a statute simply because the law's success 'depend[s]' on funds derived from ERISA plans. Indeed, we think this approach stands

---

**6.** Plaintiffs-appellants incorrectly argue that this presumption only applies to analysis of the "connection with" prong, but their argument is misplaced. *See De Buono*, 520 U.S. at 813–14 & n. 8, 117 S.Ct. 1747 (noting that

ERISA has not modified the *starting presumption* that Congress does not intended to supplant state law absent a clear expression of such intent).

ERISA preemption principles on their head." *Id.* at 1033. For this reason, we declined to find a "reference to" simply because ERISA plans provided approximately 70% of the revenue for the law at issue. *Id.*

Similarly, the Supreme Court found a New–York–state tax on the income of medical centers, including those operated by ERISA funds, not preempted by ERISA in *De Buono,* 520 U.S. at 809, 117 S.Ct. 1747. In finding no preemption, the Court reasoned that the tax was simply a tax on hospitals generally, and most hospitals are not owned by ERISA funds. *Id.* at 816, 117 S.Ct. 1747. That *some* hospitals are owned by ERISA funds is not determinative. *See id.* According to the Court, "[a]ny state tax, or other law, that increases the cost of providing benefits to covered employees will have some effect on the administration of ERISA plans, but that simply cannot mean that every state law with such an effect is pre-empted by the federal statute." *Id.*

*De Buono* and *New England Health Care* are instructive in the instant case. Plaintiffs-appellants argue that California's UBTI laws are preempted because ERISA plans comprise a large percentage of the UBTI base. *See* Plaintiffs–Appellants' Brief at 27–28. *De Buono* and *New England Health Care,* however, make clear that just because ERISA plans are included within the group of entities affected by a state law—even if they are arguably the entities predominantly affected—does not necessarily render a state law preempted.

The Supreme Court again declined to find an impermissible "reference to" in a case dealing with a state statute permitting lower wages for employees in approved apprenticeship programs. *See Cal. Div. of Labor Standards Enforcement v. Dillingham Const., Inc.,* 519 U.S. 316, 325, 117 S.Ct. 832, 136 L.Ed.2d 791 (1997).

The Court explained that no "reference to" existed "[b]ecause it seem[ed] that approved apprenticeship programs [governed by the law at issue] need[ed] not necessarily be ERISA plans." *Id.* Rather, the class of covered programs was broader. *Id.* at 326, 117 S.Ct. 832. The law at issue therefore functioned irrespective of the existence of an ERISA plan and thus did not impermissibly create a "reference to" an ERISA plan. *See id.* at 328, 117 S.Ct. 832.

The same is true in the instant case. California's UBTI laws do not single out ERISA plans. *See, e.g.,* Cal. Rev. & Tax Code §§ 17651, 23731. Rather, they are broadly crafted statutes that carve out some income and deem it taxable despite that other income remains tax exempt. That this also affects some income of trusts that are funded with monies from ERISA plans does not transform the statute into one that contains a "reference to" ERISA plans.

Prior to *Dillingham,* the Supreme Court decided three other cases that provide some insight into the contours of "reference to" preemption. The first, *Mackey v. Lanier Collection Agency & Service, Inc.,* 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988), held that a Georgia anti-garnishment statute, which "single[d] out ERISA employee welfare benefit plans for different treatment under state garnishment procedures, [was] preempted." *Id.* at 830, 108 S.Ct. 2182. The Court explained that it "expressly refer[red] to—indeed solely applie[d] to—ERISA employee benefit plans." *Id.* at 829, 108 S.Ct. 2182. However, the Court found that Georgia's *general*-garnishment statute did not single out or specifically mention ERISA plans, therefore, it was not preempted. *Id.* at 831, 108 S.Ct. 2182. In *rejecting* preemption for this statute, the Court noted that many state civil actions can be maintained against ERISA plans

without invoking preemption. *Id.* at 833, 108 S.Ct. 2182.

The second case addressed by the Court was *Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990), in which a state law created a cause of action enabling recovery when an employer wrongfully terminated a plaintiff to avoid contributing to, or paying benefits under, an ERISA plan. *Id.* at 140, 111 S.Ct. 478. In finding preemption of the state law, the Court emphasized that it was not dealing with a statute that functions irrespective of the existence of an ERISA plan. *Id.* at 139, 111 S.Ct. 478. Instead, the Court was addressing a situation in which "the existence of a pension plan [was] a critical factor in establishing liability under the State's wrongful discharge law. As a result, [the law at issue] relate[d] not merely to pension benefits, but to the essence of the pension *plan* itself." *Id.* at 139–40, 111 S.Ct. 478. In finding preemption, the Court noted that its conclusion was supported by the ERISA goal of maintaining uniformity within the body of benefits law. *Id.* at 142, 111 S.Ct. 478. The Court also noted that the state cause of action directly conflicted with an ERISA provision. *Id.*

Unlike the statute at issue in *Ingersoll–Rand,* California's UBTI laws do function irrespective of the existence of ERISA plans. *See id.* at 139, 111 S.Ct. 478. Furthermore, California's laws by no means relate to the essence of ERISA plans, nor do they disturb the uniformity of benefits law. *See id.* at 140–42, 111 S.Ct. 478. Instead, they are more akin to the general-garnishment statute found permissible in *Mackey,* 486 U.S. at 831–32, 108 S.Ct. 2182.

In the third case addressed by the Court, *District of Columbia v. Greater Washington Board of Trade,* 506 U.S. 125, 113 S.Ct. 580, 121 L.Ed.2d 513 (1992), the Court explained that when a state law *specifically refers to* benefit plans regulated by ERISA, that provides a sufficient basis for preemption. *Id.* at 130, 113 S.Ct. 580. In that case, the District of Columbia law at issue required "employers who provide health insurance for their employees to provide equivalent health insurance coverage for injured employees eligible for workers' compensation benefits." *Id.* at 126–27, 113 S.Ct. 580. The health insurance required to be provided to eligible employees "[was] measured by reference to the 'existing health insurance coverage.'" *Id.* at 130, 113 S.Ct. 580 (quoting D.C.Code 1981 § 36–307(a–1)(1) (1992)). The "existing health insurance coverage" was a welfare benefit plan under ERISA. *Id.* This was an impermissible "reference to" ERISA according to the Court because "[s]uch employer-sponsored health insurance programs are subject to ERISA regulation," and therefore "any state law imposing requirements by reference to such covered programs must yield to ERISA." *Id.* at 130–31, 113 S.Ct. 580. The Court found that it made no difference that the District of Columbia law also related to ERISA-exempt worker-compensation plans. *Id.* at 131, 113 S.Ct. 580. Once it is determined that a state law relates to ERISA plans, this is sufficient irrespective of whether the law also relates to ERISA-exempt plans. *Id.* According to the Court, the law at issue "specifically refers to welfare benefit plans regulated by ERISA and on that basis alone is pre-empted." *Id.* at 130, 113 S.Ct. 580.

*Greater Washington Board of Trade* is distinguishable from the instant case. In that case, the law at issue specifically referred to plans regulated by ERISA. *Id.* In the instant case, the laws at issue, Cal. Rev. & Tax. §§ 17651, 23731, do not specifically refer to plans governed by ERISA. *See id.* Rather, they refer to trusts generally. *See id.* That some trusts happen to manage the funds of plans governed by

ERISA is too removed from the sort of specific reference that Greater Washington Board of Trade found to dictate preemption. *See Greater Wash. Bd. of Trade*, 506 U.S. at 130. We note that were we to find that California's UBTI laws *do* reference ERISA plans, the fact that they also reference ERISA-exempt plans would not save them. *See id.* at 131, 113 S.Ct. 580. Because, however, we find that the laws at issue *do not* reference ERISA plans, they remain valid.

Plaintiffs-appellants' primary argument in favor of finding a "reference to" is flawed. Plaintiffs-appellants contend that California UBTI laws "reference" ERISA plans because they impose UBTI tax on the organizations listed in 26 U.S.C. § 401(a), and these include ERISA plans. Plaintiffs-appellants are correct that California law references Section 401(a), but the law referencing Section 401(a) is not the California law mandating a tax on UBTI, Cal Rev. & Tax.Code § 17651. Rather, the California law referring to Section 401 is the statute *exempting* organizations from taxation in accordance with Section 401(a). *See* Cal Rev. & Tax. Code § 17631. Thus, plaintiffs-appellants should actually be arguing that the California law *exempting* them from state taxation is barred because it references ERISA plans, rather than arguing that the law taxing their UBTI is preempted because it references ERISA plans. For obvious reasons, plaintiffs-appellants are not making this argument.

The California UBTI statute actually at issue, Cal. Rev. & Tax.Code § 17651, simply states that it applies to any trust. Of course, insofar as a trust managing funds from ERISA plans is exempt from state taxes generally, it is included as an exempt trust that must pay UBTI tax. It is unclear otherwise, however, how the California statute mandating a tax on UBTI can be said to "reference" ERISA plans.

Because Cal. Rev. & Tax.Code § 17651 neither expressly nor impliedly references ERISA plans, it is even less tenable to argue that it singles ERISA plans out for different treatment. Additionally, it matters not—despite plaintiffs-appellants' arguments to the contrary—that ERISA plans may comprise 80% of the base affected by the law. This is insufficient to satisfy the "reference to" prong. As already discussed, the cases involving an impermissible "reference to" ERISA plans contained a much stronger connection to these plans than the connection asserted in the instant case. We thus find that the California UBTI scheme does not contain a "reference to" ERISA plans and therefore hold that it is not preempted by ERISA.

**CONCLUSION**

For the foregoing reasons, we affirm the decision of the district court granting summary judgment in favor of defendants-appellees. Any motions that were filed in connection with this case are hereby denied as moot.